THE STATE OF OHIO, APPELLEE, v. MONTGOMERY, APPELLANT.

(No. C-830781—Decided July 3, 1984.)

*Arthur M. Ney, Jr.,* prosecuting attorney, and *Christian J. Schaefer,* for appellee.

*Albert J. Rodenberg, Jr.,* for appellant.

*Per Curiam.* In this third appeal,[1] appellant, Curtis Lee Montgomery, seeks to reverse his conviction of two drug offenses. He presents three assignments of error in which the principal claim is that the trial court erred with respect to the establishment of "bulk amount" of a Schedule II depressant (methaqualone) under R.C. 2925.01 (E)(8). These are not new issues because the means whereby bulk amount of a Schedule II depressant may be proved was set forth in a 1979 decision. Nevertheless, a careful review may be useful.

The first count of the indictment charged defendant with a sale on November 25, 1979, of methaqualone in an amount equal to or exceeding the bulk amount but in an amount less than three times bulk amount, in violation of R.C. 2925.03(A)(5). The second count charged him with a sale on the next day (November 26, 1979) of the same drug of abuse in a greater amount; that is, in an amount equal to or exceeding three times the bulk amount, in violation of R.C. 2925.03(A)(7).[2] At the conclusion of the bench trial, the court found the defendant guilty of two lesser included offenses: sale of less than bulk amount under the first count, and sale of more than bulk amount but less than three times bulk amount under the second count. The court stated that it was not convinced beyond a reasonable doubt that the amount of the first sale was in excess of bulk amount, or that the amount of the second sale was in excess of three times bulk amount. However, the court found sufficient evidence of the amount involved in the second sale to convict defendant of a sale of more than bulk amount. Defendant's second assignment of error is that the prosecu-

tion's proof was insufficient to support that conviction under the second count.

The definition of "bulk amount" for a Schedule II depressant is found in R.C. 2925.01(E)(8), which reads:

" 'Bulk amount' of a controlled substance means any of the following:

"* * *

"(8) An amount equal to or exceeding one hundred twenty grams *or* thirty times the maximum daily dose *in the usual dose range specified in a standard pharmaceutical reference manual* of a compound, mixture, preparation, or substance which is, or contains any amount of, a schedule II stimulant or depressant substance, or a schedule III or IV substance;" (Emphasis added.)

We note that this definition is in the alternative: for a Schedule II stimulant or depressant, "bulk amount" may be either (1) one hundred twenty grams or (2) thirty times the maximum daily dose as specified. *State* v. *Howell* (1981), 5 Ohio App. 3d 92; *State* v. *Alfarano* (May 23, 1979), Hamilton App. No. C-780523, unreported (hereinafter *Alfarano I*). See discussion of "bulk amount" in *State* v. *Denney* (Oct. 22, 1980), Hamilton App. No. C-790765, unreported, at 9 *et seq.* Thus, under an indictment charging in general terms a sale of a Schedule II stimulant or depressant by an unqualified reference to "bulk amount," the prosecution may establish the charged amount by proving weight under either of the alternatives. If the second alternative is relied on, the "maximum daily dose" must be proved to be "specified in a standard pharmaceutical reference manual." R.C. 2925.01(N) reads:

"'Standard pharmaceutical reference manual' means the current edition,

---

[1] In the first appeal, No. C-800977, we affirmed the grant of a mistrial and an order for a new trial. In the second appeal, No. C-820655, we again affirmed an order of the trial court.

[2] The first and second counts originally

contained a reference to the specific amount of methaqualone ("102 unit doses" in the first, and "150 unit doses" in the second). These references were obviously surplusage, and they were duly deleted by the trial court upon oral motion made by the prosecution after close of the evidence.

with cumulative changes if any, of any of the following reference works:

"(1) 'The National Formulary';

"(2) 'The United States Pharmacopeia,' prepared by authority of the United States Pharmacopeial Convention, Inc.;

"(3) Other standard references that are approved by the state board of pharmacy."

While there is no need, obviously, to refer to the manual if the first alternative is used to establish bulk amount, we hold that under the second alternative "maximum daily dose" must be proved exactly as the statute requires; that is, by proving "the usual dose range *specified* in a standard pharmaceutical reference manual." (Emphasis added.)

While the definition of "bulk amount" is obviously a matter of law, the questions of whether a substance seized from an accused is a drug of abuse and whether it exceeds the bulk amount are questions of fact. Thus the trier of fact must be convinced that the evidence has established beyond a reasonable doubt the identity and weight of a Schedule II stimulant or depressant before the defendant can be found guilty. A conviction of a sale of greater than the bulk amount can be affirmed only if the evidence is sufficient to establish either (1) a gross weight of the substance of one hundred twenty grams or more, or (2) what is the "maximum daily dose in the usual dose range specified in a standard pharmaceutical reference manual" and a weight equal to or exceeding thirty times that dose. All those issues are issues of fact. We stated in *Alfarano I, supra,* and in *State v. Alfarano* (Dec. 10, 1980), Hamilton App. No. C-790873, unreported (hereinafter *Alfarano II*), that the "maximum daily dose" must be established (1) by stipulation, (2) by expert testimony as to what a standard pharmaceutical reference manual prescribes, or (3) by a properly proven copy of the manual itself.[3] Note that the information, if not agreed upon, must be determined by reference to the manual. Further, a laboratory report offered in evidence under R.C. 2925.51 is not *prima facie* evidence of "maximum daily dose," even though it may be evidence of the content, identity, and weight of the substance (or of the existence and number of unit doses). *Alfarano I, supra.*

In the instant case, defendant offered no evidence and now claims, in his second assignment of error, that contrary to the trial court's overruling of his Crim. R. 29 motion, the evidence was insufficient to establish the second sale as being in an amount more than bulk amount. The prosecution's evidence about bulk amount is found in the testimony of its expert toxicologist and in that expert's two laboratory reports offered and received in evidence pursuant to R.C. 2925.51.

Our examination of the expert's testimony discloses that he never stated what a standard pharmaceutical reference manual prescribes as the maximum daily dose of methaqualone. While he stated that the tablets on the market "are 150 milligram tablets, 300 milligram tablets, and there is also a 400 milligram capsule which contains 400 milligrams of methaqualone hydrochloride," neither that remark nor any other part of his testimony established the applicable "maximum daily dose in the usual dose range *specified in a standard pharmaceutical reference manual.*" (Emphasis added.)

Both laboratory reports contained

---

[3] This position has been maintained over the years. *State v. Kendrick* (June 8, 1983), Hamilton App. No. C-820531, unreported; *State v. Fagin* (Aug. 19, 1981), Hamilton App. No. C-800702, unreported; *State v. Denney, supra; State v. Adams* (Feb. 6, 1980), Hamilton App. No. C-790195, unreported. It is clear that bulk amount and maximum daily dose may be proved by expert testimony whether or not a laboratory report is admitted in evidence under R.C. 2925.51.

the following remark: "The maximum daily dose of methaqualone is 400 milligrams." This was insufficient to establish maximum daily dose, because the remark does not state that four hundred milligrams is "in the usual dose range specified in a standard pharmaceutical reference manual." Thus, assuming that the laboratory reports as received in evidence (through their identification by the expert while on the stand) were sufficient to prove the contents of the reports, they did not establish the maximum daily dose in the manner that the statute requires; that is, as being "in the usual daily dose range specified in a standard pharmaceutical manual."

After the prosecution and the defendant rested, during the course of extended legal arguments about motions and cross-motions made by both sides, the court appeared to be willing to take judicial notice of "The National Formulary." The copy presented to the court apparently stated that the usual doses of methaqualone were seventy-five milligrams, one hundred fifty milligrams, and three hundred milligrams, thus indicating that the maximum daily dose was three hundred milligrams. No copy of that reference manual or the pertinent page is in the record. More importantly, the trial court expressed its doubt about whether the copy it was examining had the latest cumulative changes, considering the expert's testimony that there was a four hundred milligram capsule available on the market. Assuming *arguendo* that the court took judicial notice of the reference manual, we believe the court erred because our interpretation of R.C. 2925.01(E)(8) is that "maximum daily dose" must be stipulated or proved. It cannot be furnished to the trier of fact by judicial notice. The error, never-

theless, was not prejudicial in this case, because the court found that the prosecution failed to prove bulk amount by the second alternative; the court stated that it was not convinced beyond a reasonable doubt that the amount of methaqualone involved in the second sale was in excess of thirty times the maximum daily dose. In other words, the court rejected the facts sought to be proved by judicial notice of "The National Formulary."[4]

The trial court, instead, relied on the first alternative for the establishment of bulk amount. Since the laboratory report about the expert's analysis of one hundred fifty tablets (out of 1,991 seized in the second sale) stated clearly that their aggregate weight was 121.4 grams, the court concluded that the prosecution had established a sale of more than one but less than three bulk amounts, and found defendant guilty of violating R.C. 2925.03(A)(5). The court did not err. The second assignment of error is without merit.

In the third assignment of error, defendant claims the judgment was against the manifest weight of the evidence, because the defendant was not, he claims, a participant in the first sale, and because the second sale did not involve methaqualone exceeding bulk amount. After reviewing the entire record and weighing the evidence, reasonable inferences therefrom and the credibility of the witnesses, we conclude that in resolving conflicts in the evidence, the court did not lose its way or create a manifest miscarriage of justice with respect to the conviction as to either sale. A detailed review of the evidence is not necessary. The convictions were not against the manifest weight of the evidence. *Tibbs* v. *Florida* (1982), 457 U.S. 31; *State* v. *Robinson* (1955), 162 Ohio St. 486 [55 O.O. 388];

---

[4] The defendant's first assignment of error is that taking judicial notice of "The National Formulary" was prejudicial error. It has no merit, because the error, even though demonstrated, was not prejudicial.

*State* v. *Petro* (1947), 148 Ohio St. 473 [36 O.O. 152]. The third assignment of error has no merit.

We affirm.

*Judgment affirmed.*

SHANNON, P.J., PALMER and BLACK, JJ., concur.