OPINION
{¶ 1} Defendant-appellant, Sandra K. Brown, appeals her convictions in the Preble County Court of Common Pleas for two counts of trafficking in drugs and two counts of the sale of dangerous drugs. The decision of the trial court is affirmed as modified.
 {¶ 2} In June 2001, Investigator David Lindloff ("Lindloff") of the Preble County Prosecutor's office received information that appellant was selling medications prescribed to her from her home in West Alexandria, Ohio. Lindloff outfitted an undercover agent from the North American Security Solutions Corporation, Whitney Lukasik ("Lukasik"), with "buy money" and an audio recording device.
 {¶ 3} On June 30, 2001, Lukasik was invited into appellant's house where she purchased 40 pink tablets from appellant for $280 and 28 white tablets for $56. Brooke Dunn, an analyst at the Miami Valley Regional Crime Lab, determined that the pink tablets were 20mg of Oxycontin and the white tablets were Carisoprodol.
 {¶ 4} On July 21, 2001, Lukasik returned to appellant's home for another drug sale transaction. Appellant sold Lukasik 59 pink tablets for $480 and 60 white tablets for $120. Again, forensic analysis confirmed that the pink tablets were 20mg of Oxycontin and the white tablets were Carisoprodol.
 {¶ 5} A search warrant was executed for appellant's home immediately after the drug purchase on July 21, 2001. The "buy money" used by Lukasik was found on appellant's kitchen table. The money was positively identified by the serial numbers, which had been photocopied prior to the drug buy. Appellant was taken into custody. Appellant then gave a taped statement to Lindloff wherein she admitted that she sold her prescription medication to the undercover agent on June 30 and July 21, 2001.
 {¶ 6} Both drug sales took place at appellant's home on West 3rd Street in West Alexandria, Ohio. Appellant's residence is approximately 278 feet from the nearest door of the Twin Valley Schools, located directly across the street from appellant's home. Appellant was charged with two counts of sale of a dangerous drug and two counts of trafficking in drugs.
 {¶ 7} The state presented evidence that the July 21 sale of Oxycontin exceeded the "bulk" amount of that drug. Robert Amiet, a compliance specialist with the Ohio Board of Pharmacy, testified that the bulk amount of 20mg Oxycontin tablets on the date of the offenses was ten tablets. Appellant was convicted on all counts. Appellant appeals the convictions raising four assignments of error:
 {¶ 8} Assignment of Error No. 1:
 {¶ 9} "The trial court erred in denying Ms. Brown's motions to dismiss the charges against her because the state failed to produce evidence sufficient to establish all the elements of the alleged offenses, specifically that Ms. Brown sold oxycontin in an amount that exceeded `bulk' and that she was not an authorized distributor of dangerous drugs."
 {¶ 10} Appellant argues that no maximum daily dose or usual dose range for Oxycontin is specified in a standard pharmaceutical reference manual, therefore, the bulk amount cannot be determined using the maximum daily dosage method. Furthermore, appellant argues that the bulk amount of Oxycontin cannot be established by expert opinion or by reference to another form of Oxycontin, such as Roxicodone. Consequently, appellant argues the state failed to establish that her sale of Oxycontin exceeded the bulk amount.
 {¶ 11} In a sufficiency of the evidence claim, the relevant inquiry is whether after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, citing Jackson v. Virginia
(1979), 443 U.S. 307, 99 S.Ct. 2781.
 {¶ 12} The bill of particulars sets forth in count three that "in violation of R.C. 2925.03(A)(1), * * * [appellant] did knowingly sell or offer to sell a controlled substance, to wit: Fifty-nine (59) tablets, 20mg. each of Oxycontin (aka: Oxycodone), a Schedule II controlled substance." R.C.2925.03(A)(1), (C)(1)(c) states that it is a crime to sell an amount of a Schedule II drug that "equals or exceeds the bulk amount" of that drug. R.C. 2925.01(D)(1)(d) defines "bulk amount" of a Schedule II opiate drug, such as Oxycontin, as "an amount equal to or exceeding twenty grams or five times the maximum daily dose in the usual dose range specified in a standard pharmaceutical reference manual."
 {¶ 13} Robert Amiet is a compliance specialist with the Ohio Board of Pharmacy. He authored the Ohio State Board of Pharmacy's Controlled Substance Reference Table. Amiet testified that Oxycontin is a form of Oxycodone. He testified that Oxycodone could be prescribed in an immediate release form or an extended release form. Oxycontin is the trade name for the extended release form of Oxycodone. Roxicodone is the trade name for the immediate release form of Oxycodone.
 {¶ 14} Amiet testified that the United States Pharmacopoeia Drug Information, a standard pharmaceutical reference manual, listed the daily dose range for Roxicodone as 20mg to 40mg. Therefore, Amiet testified the bulk amount for Roxicodone would be 200mg, or five times the maximum daily dose in the usual dose range of 40mg. Amiet testified that that the bulk amount for Oxycontin is the same as bulk amount for Roxicodone because they both contain the same substance, Oxycodone. Thus, Amiet testified that he listed 200 mg, or ten 20mg tablets, as the bulk amount of Oxycontin on the Ohio State Board of Pharmacy's Controlled Substance Reference Table.
 {¶ 15} Viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. In a taped interview appellant admitted that she sold Oxycontin to Lukasik on July 21, 2001. Lukasik testified that appellant sold her 59 tablets of 20mg Oxycontin for $480. According to Amiet's testimony, 59 20mg Oxycontin tablets are more than five times the bulk amount of Oxycontin. As a result, the argument is overruled.
 {¶ 16} Appellant also argues that the state "failed to offer any evidence that [she] is not an authorized distributor of dangerous drugs pursuant to R.C. 4729.51(C)(4)."
 {¶ 17} Pursuant to R.C. 4729.51(C)(1), "[e]xcept as provided in division (C)(4) of this section, no person shall sell, at retail, dangerous drugs." R.C. 4729.51(C)(4) states that division (C)(1) does "not apply to a registered wholesale distributor of dangerous drugs, [or] a licensed terminal distributor of dangerous drugs * * *."
 {¶ 18} However, the state, for its case-in-chief, does not have the burden to prove a negative: that a defendant charged with this crime is not a registered or licensed distributor of dangerous drugs. Rather, the burden of going forward with evidence to establish status as a registered or licensed distributor of dangerous drugs is with the defendant. Cf. Statev. Grays (Dec. 6, 2001), Cuyahoga App. No. 79484, at *3, 2001-Ohio-4251 (holding that the state did not have the burden to prove defendant was not a licensed salvage dealer).
 {¶ 19} When asked about her occupation, appellant informed Lindloff during her interview on July 21, 2001, that she "works for [her] bother" as a house painter. Appellant failed to offer any evidence that she is a registered wholesale distributor of dangerous drugs or a licensed terminal distributor of dangerous drugs pursuant to R.C. 4729.51(C)(4). Consequently, the first assignment of error is overruled.
 {¶ 20} Assignment of Error No. 2:
 {¶ 21} "Mr. Amiet's testimony regarding the opinion of the Ohio State Board of pharmacy should have been excluded, and neither said testimony nor Mr. Amiet's personal opinion formed a proper basis for the trail [sic] court's decision."
 {¶ 22} Appellant argues that Amiet was not qualified as an expert and therefore his testimony regarding his opinion and the opinion of the Ohio State Board of Pharmacy should be excluded.
 {¶ 23} The trial court has broad discretion in the admission or exclusion of evidence and, in the absence of an abuse of discretion which results in material prejudice to a defendant, an appellate court should be slow to reverse evidentiary rulings.Krischbaum v. Dillon (1991), 58 Ohio St.3d 58, 66. An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. State v. Adams (1980), 62 Ohio St.2d 151, 157.
 {¶ 24} Amiet has been a Compliance Specialist with the Ohio State Board of Pharmacy for 16 years. Amiet authored the Controlled Substance Reference Table, which contains the bulk amounts of all controlled substances under the Ohio criminal code. Amiet testified to the manner in which he established the bulk amounts of the controlled substances for the Ohio State Board of Pharmacy.
 {¶ 25} The prosecutor asked Amiet if the bulk amounts listed on the Controlled Substance Reference Table are the "official position of the Ohio State Board of Pharmacy." Defense counsel objected and the objection was overruled. Amiet testified that the official position of the Ohio State Board of Pharmacy is that 200mg. is the bulk amount of Oxycodone in any form.
 {¶ 26} Permitting Amiet to testify regarding the Ohio State Board of Pharmacy's opinion on the Controlled Substance Reference Table was not unreasonable, arbitrary or unconscionable as Amiet authored the Controlled Substance Reference Table for the Ohio State Board of Pharmacy. Therefore, the argument is overruled.
 {¶ 27} Appellant also argues Amiet's testimony is not a proper basis for determining the bulk amount of Oxycontin. However, expert testimony may be used to establish what a standard pharmaceutical reference manual prescribes. See Statev. Montgomery (1984), 17 Ohio App.3d 258, 260. Amiet's testimony elucidated what a standard pharmaceutical reference manual prescribes. Consequently, the trial court did not act unreasonably, arbitrarily or unconscionably when it allowed Amiet to testify regarding his methods for deriving the bulk amount of Oxycodone on the Ohio State Board of Pharmacy's Controlled Substance Reference Table. Therefore, the assignment of error is overruled.
 {¶ 28} Assignment of Error No. 3:
 {¶ 29} "In the alternative, Ms. Brown's convictions for aggravated drug trafficking should be reversed because the State failed to meet its burden of proving all elements of the alleged crime beyond a reasonable doubt and the convictions are against the manifest weight of the evidence."
 {¶ 30} Appellant argues that her convictions are not supported by sufficient evidence and are against the manifest weight of the evidence. While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion. State v.Thompkins, 78 Ohio St.3d 380, 390, 1997-Ohio-52.
 {¶ 31} When a defendant asserts that her conviction is against the manifest weight of the evidence, "an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339,340.
 {¶ 32} This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id. Therefore, a reviewing court will not reverse a conviction if the state presented substantial evidence upon which the trier of fact could reasonably conclude that all essential elements of the offense had been established beyond a reasonable doubt. State v.Eskridge (1988), 38 Ohio St.3d 56, 59, citing State v. Eley
(1978), 56 Ohio St.2d 169, syllabus.
 {¶ 33} Because sufficiency is required to take a case to the jury, "a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency. Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." State v. Roberts (Sept. 17, 1997), Lorain App. No. 96CA006462.
{¶ 34} Appellant was convicted of two counts of aggravated drug trafficking pursuant to R.C. 2925.03(A)(1). R.C.2925.03(A)(1)(C)(1)(c) and (d), provide that, "No person shall knowingly, * * * [s]ell or offer to sell a controlled substance; * * * [i]f the drug involved in the violation is any compound, mixture, preparation or substance included in schedule I or schedule II * * * whoever violated division (A) of this section is guilty of aggravated trafficking in drugs * * * if the amount of the drug involved equals or exceeds the bulk amount * * * and if the offense was committed in the vicinity of a school * * *."
 {¶ 35} Appellant admitted, in a taped interview, that she sold her prescription medication to an undercover agent. Lukasik testified that on June 30, 2001, appellant sold her 40 Oxycontin tablets for $280 and 28 Carisoprodol tablets for $56. Lukasik also testified that on July 21, 2001, appellant sold her 59 Oxycontin tablets for $480 and 60 Carisoprodol tablets for $120. Amiet testified that 59 Oxycontin tablets are more than five times the bulk amount. Furthermore, the state presented evidence to demonstrate that appellant's residence is approximately 278 feet from the nearest door of the Twin Valley Schools, located directly across the street from appellant's home.
 {¶ 36} After reviewing the record, weighing the evidence and all reasonable inferences, considering the credibility of witnesses, and in resolving conflicts in the evidence, we cannot determine that the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed. The convictions are supported by the weight of the evidence. A determination that the convictions are supported by the weight of the evidence is also dispositive of the issue of sufficiency. Consequently, the assignment of error is overruled.
 {¶ 37} Assignment of Error No. 4:
 {¶ 38} "Ms. Brown's conviction for the first degree felony should be reversed because even if this court agrees with the state that the bulk amount of oxycontin equals 200 miligrams, Ms. Brown did not sell oxycontin in an amount that equals or exceeds fifty times that amount."
 {¶ 39} Count three of the indictment charging appellant states that she did knowingly sell "59 tablets, 20mg. each Oxycontin" in violation of R.C. 2925.03(A)(1). However, prior to trial the state orally moved to amend the code section cited in the indictment. The amended indictment changes the cited revised code section from R.C. 2925.03(A)(1) to R.C. 2925.03(A)(1), (C)(1)(e).
 {¶ 40} However, R.C. 2925.03(A)(1), (C)(1)(e) charges the sale of a controlled substance in quantities greater than 50 times bulk. The language contained in the initial indictment, describing a quantity greater than five but less that 50 times bulk, is found in R.C. 2925.03(A)(1), (C)(1)(d). Apparently the amended indictment contains a clerical or scrivener's error in the revised code designation.
 {¶ 41} To be effective, an indictment must contain language sufficient to give the accused notice of the charges against her.State v. Luna (1994), 96 Ohio App.3d 207, 210. The original indictment contained the proper language as to the possible penalty and the amount of drugs in relationship to the bulk amount. Count three of the indictment alleges that appellant sold "59 tablets, 20mg. each Oxycontin" and that this offense is a "felony of the first degree since the amount of the drug exceed five times the bulk amount, but does not exceed fifty (50) times the bulk amount * * *."
 {¶ 42} Furthermore, the bill of particulars states that count three charges appellant with "a violation of R.C. 2925.03 (A)(1), entitled `Aggravated Trafficking in Drugs,' * * * the amount of the drug exceeds five times the bulk amount, but does not exceed fifty times the bulk amount * * * defendant did knowingly sell or offer to sell a controlled substance, to wit: Fifty-nine (59) tablets, 20mg. each of Oxycontin (aka: Oxycodone), a Schedule II controlled substance."
 {¶ 43} While the amended indictment cites R.C. 2925.03(A)(1), (C)(1)(e) in count three instead of R.C. 2925.03(A)(1), (C)(1)(d), the misnumbering of the statute in an indictment does not invalidate the indictment. State ex rel. Dix v. McAllister,81 Ohio St.3d 107, 108, 1998-Ohio-646, citing State v. Morales
(1987), 32 Ohio St.3d 252, 254. Crim.R. 7(B) provides, in part: "Error in the numerical designation or omission of the numerical designation shall not be grounds for dismissal of the indictment or information, or for reversal of a conviction, if the error or omission did not prejudicially mislead the defendant." Appellant was not prejudiced in preparing her defense because she was given adequate notice of what the state intended to prove at trial.State v. Earle (1997), 120 Ohio App.3d 457, 467.
 {¶ 44} In its decision, the trial court found appellant guilty of count three, aggravated trafficking in drugs, pursuant to R.C. 2925.03(A)(1). However, the sentencing entry contains the same clerical error as the amended indictment. The sentencing entry memorializes that appellant was convicted on count three pursuant to R.C. 2925.03(A)(1), (C)(1)(e). This is in error and the proper revised code section is R.C. 2925.03(A)(1), (C)(1)(d).
 {¶ 45} We find that the trial court's citation to the incorrect Revised Code section is a clerical mistake.
 {¶ 46} Consequently, we affirm and modify the trial court's sentencing entry. The sentencing entry should now reflect that appellant was convicted of aggravated trafficking in drugs in violation of R.C. 2925.03(A)(1), (C)(1)(d).
 {¶ 47} Affirmed as modified.
Valen, P.J., and Young, J., concur.