OPINION
{¶ 1} Appellant George Fisher ("appellant") appeals his conviction, in the Delaware County Court of Common Pleas, for aggravated possession of drugs in an amount exceeding five times the bulk amount but less than fifty times the bulk amount. The following facts give rise to this appeal.
 {¶ 2} On May 28, 2004, Officer Adam Moore of the Delaware Police Department received a radio dispatch advising him that an anonymous caller had located appellant at the local VFW in the City of Delaware. The dispatcher asked Officer Moore to respond to the VFW due to an active warrant for appellant's arrest. When Officer Moore arrived at the VFW, he placed Officer Zoller at the western door of the building in an attempt to contain appellant if he tried to flee. Officer Cox accompanied Officer Moore to the east side of the building and both officers entered the VFW.
 {¶ 3} The officers observed appellant sitting at the far end of the bar wearing a straw hat. Upon spotting the officers, appellant jumped from his bar stool and ran out the door the officers mistakenly believed was locked. The officers chased appellant while identifying themselves and ordering him to stop. Appellant continued to run and entered an open field where he eventually surrendered.
 {¶ 4} After walking appellant back to the police cruiser, the officers searched appellant for weapons. In appellant's pocket, the officers discovered a pill bottle full of a large quantity of green pills. The bottle did not contain a prescription label. Appellant immediately informed the officers that it contained Oxycontin prescribed to him for back pain. Shortly thereafter, appellant's brother arrived, at the VFW, and appellant asked the officers to give the Oxycontin, as well as his other property, to his brother. When officers refused to give the medication to his brother, appellant stated the Oxycontin belonged to a friend. When asked the name of the friend, appellant informed officers that he needed to speak to an attorney before giving the officers any information.
 {¶ 5} On June 10, 2004, the Delaware County Grand Jury indicted appellant for one count of aggravated possession of drugs. This matter proceeded to a jury trial on July 6. Following deliberations, the jury found appellant guilty as charged. The trial court sentenced appellant to a four-year prison term. Appellant appeals the jury's verdict and sets forth the following assignments of error for our consideration:
 {¶ 6} "I. THE JURY'S VERDICT OF GUILTY WAS IMPROPER AS THE STATE OF OHIO FAILED TO PRODUCE EVIDENCE SUFFICIENT TO SHOW THAT THE DEFENDANT KNOWINGLY POSSESSED A SCHEDULE II CONTROLLED SUBSTANCE IN AN AMOUNT GREATER THAN FIVE (5) TIMES THE DRUG'S BULK AMOUNT.
 {¶ 7} "II. THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY INSTRUCTING THE JURY AS TO WHAT THE BULK AMOUNT WAS FOR THE TYPE OF OXYCODONE IN QUESTION, WHEN THE STATE FAILED TO PRODUCE ANY EVIDENCE REGARDING THE MAXIMUM DAILY DOSE.
 {¶ 8} "III. THE JURY'S VERDICT OF GUILTY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED AT THE TRIAL OF THIS MATTER.
 {¶ 9} "IV. MR. FISHER WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL."
 I {¶ 10} In his First Assignment of Error, appellant maintains the jury's verdict was improper because the state failed to produce evidence sufficient to show that he knowingly possessed a Schedule II controlled substance in an amount greater than five times the drug's bulk amount. We disagree.
 {¶ 11} Prior to addressing the merits of this assignment of error, appellant acknowledges that defense counsel failed to make motions for acquittal either at the end of the state's case or after all the evidence had been submitted. "`In order to preserve the right to appeal the sufficiency of evidence upon which a conviction is based, a defendant must timely file a Crim.R. 29 motion for acquittal with the trial court.' State v.Perry (Aug. 29, 1997), Trumbull App. No. 94-T-5165, unreported, 1997 WL 590789, at 10, citing State v. Roe (1989),41 Ohio St.3d 18, 25, 535 N.E.2d 1351. Therefore, `[i]f a Crim.R. 29 motion is not made by a defendant, he or she waives any sufficiency of evidence argument on appeal.' Id. * * *" State v.Alicie, Knox App. No. 04-CA-000020, 2005-Ohio-1758, at ¶ 19.
 {¶ 12} However, even if we were to consider appellant's sufficiency argument, we would conclude that it lacks merit. Sufficiency of the evidence is a question for the trial court to determine. It concerns whether the state has met its burden to produce evidence on each element of the crime charged, sufficient for the matter to be submitted to the jury. Thus, on review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. State v. Jenks (1991), 61 Ohio St.3d 259,263.
 {¶ 13} Appellant's argument regarding sufficiency of the evidence is that the state failed to present sufficient evidence demonstrating the amount of Oxycontin possessed by him exceeded five times the bulk amount. Appellant maintains the state was required to present testimonial evidence of the maximum daily dosage of Oxycontin as specified in a standard pharmaceutical reference manual. In support of this argument, appellant citesState v. Montgomery (1984), 17 Ohio App.3d 258.
 {¶ 14} In the Montgomery case, the First District Court of Appeals held that the maximum daily dose must be established (1) by stipulation, (2) by expert testimony as to what a standard pharmaceutical reference manual prescribes, or (3) by a properly proven copy of the manual itself. Id. at 260. In State v.Caldwell (June 23, 1986), Richland App. No. CA-2369, we specifically rejected the requirement of the Montgomery
decision regarding how the maximum daily dose must be established. Id. at 3. Instead, in Caldwell, we stated:
 {¶ 15} "We expressly state that we reject that dictum [inMontgomery] and elect not to follow it. Analyzing the case from that point of view, we state that it is clear to us now that it was clear to all at trial that the trial court was taking judicial notice of the contents of the pharmaceutical reference manual provisions supporting his jury instruction. No record objection or claim was made that in fact that manual did not contain the provision now put in issue upon appeal. No claim was made at trial that the judge incorrectly read the manual or was judicially noticing it contrary to Evid.R. 201." Id. at 3.
 {¶ 16} Recently, in State v. Morales, Licking App. No. 2004 CA 68, 2005-Ohio-4714, we addressed this issue again and held as follows:
 {¶ 17} "While appellant argues that the court was required to have testimony or other proof as to the definition of `bulk amount,' we disagree. Methamphetamine is a Schedule II drug by statute. The bulk amount of a controlled substance containing any amount of a schedule II stimulant is three grams. R.C.2925.01(E)(1)(g). At the trial in this matter, Timothy Elliget testified as to the amount of methamphetamine found in each baggie.
 {¶ 18} "As noted by the court in State v. Feltner (Aug. 16, 1989), Miami App. No. 88-CA-34, 1989 WL 94550: `Crim.R. 27 adopts for criminal proceedings the judicial notice provisions of Civ.R. 44.1. The rule requires the court to take full judicial notice of the statutory law of Ohio and to present that law to the jury without separate proof. The jury is required to accept the court's instruction.
 {¶ 19} "`No additional proof beyond the terms of the statute was required for the court's determination for the jury of the meaning of "bulk amount". . . . Testimonial proof of the weight and content of the material offered for sale by Feltner then permitted the jury to conclude that the terms of the statute were met.'" Id. at 5.
 {¶ 20} "Likewise, in the case sub judice, testimony from Timothy Elliget as to the amount of methamphetamine in each baggie permitted the jury to conclude that appellant possessed 100 times the bulk amount of methamphetamine. No additional proof was required." Morales at ¶ 57-¶ 60.
 {¶ 21} In the matter currently before the Court, Officer Moore testified that 49 pills were recovered from appellant and that the pills recovered matched the identification marks depicted in the photograph of Oxycodone presented in the National Association of Drug Diversion Investigators, Inc.'s publication. Tr. at 154. The photograph of the 80 milligram Oxycodone pill in the exhibit, which bore the markings "80" and "OC" match the pills recovered from appellant. Id. Further, Officer Moore testified that the bulk amount of Oxycodone is six, 80 milligram tablets. Id. at 156-157. The state also introduced the Bureau of Criminal Identification and Investigation laboratory analysis of the pills found on appellant, which were identified at Oxycodone. Finally, the trial court instructed the jury that Oxycodone is a Schedule II controlled substance and that "bulk amount" is defined as six unit dosages of eighty milligram doses. Id. at 265, 269.
 {¶ 22} Based upon the above, we conclude sufficient evidence of the weight and content of the controlled substance possessed by appellant was presented to the jury. This evidence was sufficient for the jury to conclude that appellant possessed the controlled substance Oxycontin in an amount exceeding five times the bulk amount.
 {¶ 23} Appellant's First Assignment of Error is overruled.
 II {¶ 24} Appellant contends, in his Second Assignment of Error, the trial court committed reversible error when it instructed the jury as to the bulk amount for Oxycontin. Appellant further argues the state failed to present any evidence pertaining to bulk amount through testimony as to either weight or maximum daily dosage. We disagree with both arguments.
 {¶ 25} Officer Moore specifically testified as to the bulk amount of Oxycodone in 80 milligram tablets. Tr. at 156-157. Laboratory testing revealed the substance seized from appellant was Oxycontin consisting of 49, green round marked tablets, approximately 13.42 grams. Tr. at 160. Further, the trial court took judicial notice that Oxycodone is a Schedule II controlled substance. Tr. at 265. Finally, as noted above, the trial court instructed the jury that "bulk amount" is defined as six unit dosages of eighty milligram doses. Tr. at 265, 269.
 {¶ 26} Based upon this evidence, the trial court did not err when it instructed the jury as to the bulk amount for Oxycontin.
 {¶ 27} Appellant's Second Assignment of Error is overruled.
 III {¶ 28} In his Third Assignment of Error, appellant maintains the jury's verdict is against the manifest weight of the evidence. We disagree.
 {¶ 29} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Martin (1983), 20 Ohio App.3d 172, 175. See also, State v. Thompkins (1997), 78 Ohio St.3d 380. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175.
 {¶ 30} Appellant claims the verdict is against the manifest weight of the evidence because he was merely in the process of returning the Oxycontin to its rightful owner, who had left the pill bottle in his vehicle. In support of this argument, appellants cites the testimony of Rick Pounds, wherein he testified that, "* * * My brother called me and told me that Tony called and said I lost my prescription in his car, he would meet me Friday night at the VFW, give them back to me." Tr. at 190. Appellant argues Mr. Pounds' testimony established that he gave implied consent, to appellant, to hold the medication until such time as it could be returned.
 {¶ 31} The jury had the opportunity to weigh the credibility of Mr. Pounds and rejected his testimony. In doing so, we cannot find the jury clearly lost its way in resolving conflicts in the evidence. Officer Moore testified that appellant refused to reveal the name of the "friend" for whom he was holding the Oxycontin. Tr. at 158. Appellant claimed he was holding the medication, for a friend, after he told Officer Moore that the Oxycontin had been prescribed to him for back pain. Id. Further, Mr. Pounds could not explain why the label of the Oxycontin bottle had been removed. Although Mr. Pounds testified that he commonly removes labels from his medication, Officer Moore visited Mr. Pounds' residence and observed multiple pill bottles that contained labels. Id. at 189-190, 214-215.
 {¶ 32} We do not find the fact that the jury did not find Mr. Pounds' testimony credible requires us to conclude the jury's verdict is against the manifest weight of the evidence. It is the jury's function to resolve conflicts in the evidence. In doing so, it does not appear the jury clearly lost its way and created a manifest miscarriage of justice.
 {¶ 33} Appellant again argues, under this assignment of error, that the state failed to produce credible testimony to establish that the amount of Oxycontin found on appellant was five times the bulk amount for that controlled substance. We have rejected this argument in the previous two assignments of error. Therefore, we will not address it again under this assignment of error.
 {¶ 34} Appellant's Third Assignment of Error is overruled.
 IV {¶ 35} Appellant maintains, in his Fourth Assignment of Error, he was denied effective assistance of counsel. We disagree.
 {¶ 36} A claim for ineffective assistance of counsel requires a two-prong analysis. The first inquiry is whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. Strickland v. Washington (1984), 466 U.S. 668;State v. Bradley (1989), 42 Ohio St.3d 136.
 {¶ 37} In determining whether counsel's representation fell below an objective standard of reasonableness, judicial scrutiny of counsel's performance must be highly deferential. Bradley at 142. Because of the difficulties inherent in determining whether effective assistance of counsel was rendered in any give case, a strong presumption exists counsel's conduct fell within the wide range of reasonable, professional assistance. Id.
 {¶ 38} In order to warrant a reversal, the appellant must additionally show he was prejudiced by counsel's ineffectiveness. "Prejudice from defective representation sufficient to justify reversal of a conviction exists only where the result of the trial was unreliable or the proceeding fundamentally unfair because of the performance of trial counsel." State v. Carter
(1995), 72 Ohio St.3d 545, 558, citing Lockhart v. Fretwell
(1993), 506 U.S. 364, 370.
 {¶ 39} The United States Supreme Court and the Ohio Supreme Court have held a reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." Bradley at 143, quoting Strickland at 697. Accordingly, we will direct our attention to the second prong of the Strickland test.
 {¶ 40} Appellant sets forth three arguments in support of this assignment of error. First, appellant contends defense counsel was ineffective because she failed to object to the preliminary and final jury instructions concerning bulk amount. Having found, in the First and Second Assignments of Error, no error concerning the definition of "bulk amount", we find appellant was not prejudiced by defense counsel's failure to object to the jury instructions.
 {¶ 41} Second, appellant argues defense counsel was ineffective because she failed to move for acquittal, at the end of the state's case, and failed to renew the motion after all of the evidence had been submitted. Appellant was not prejudiced by defense counsel's failure to move for acquittal because we reviewed the sufficiency arguments contained in appellant's First Assignment of Error even though such arguments may be considered waived if a motion for acquittal is not made during trial. Thus, appellant was not prejudiced by defense counsel's failure to move for acquittal.
 {¶ 42} Third, appellant claims defense counsel was ineffective because she failed to object to Officer Moore's testimony as to bulk amount. As noted above, we found no error with the evidence presented during trial concerning bulk amount. Nor do we find any error with Officer Moore's testimony concerning bulk amount. Therefore, appellant was not prejudiced by defense counsel's failure to object to Officer Moore's testimony concerning bulk amount.
 {¶ 43} Because appellant was not able to establish that he was prejudiced by defense counsel's performance, we find appellant may not maintain a claim for ineffective assistance of counsel.
 {¶ 44} Appellant's Fourth Assignment of Error is overruled.
 {¶ 45} For the foregoing reasons, the judgment of the Court of Common Pleas, Delaware County, Ohio, is hereby affirmed.
Wise, P.J. Hoffman, J., and Edwards, J., concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Delaware County, Ohio, is affirmed.
Costs assessed to Appellant.