[Cite as *State v. Drummond*, 2012-Ohio-1468.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
### WYANDOT COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,                CASE NO. 16-11-08

    v.

SHANNON L. DRUMMOND,           O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Wyandot County Common Pleas Court
Trial Court No. 11-CR-0022

Judgment Affirmed

Date of Decision:   April 2, 2012

APPEARANCES:

    *Howard A. Elliott* **for Appellant**

    *Jonathan Miller and Douglas D. Rowland* **for Appellee**

**WILLAMOWSKI, J**.

{¶1} Defendant-Appellant, Shannon L. Drummond ("Drummond"), appeals the judgment of the Wyandot County Court of Common Pleas sentencing him to prison for four years after a jury found him guilty on two counts of aggravated possession of drugs. On appeal, Drummond contends that the trial court erred in admitting evidence and testimony; that he was denied effective assistance of counsel; and, that the jury's decision was against the manifest weight of the evidence. For the reasons set forth below, the judgment is affirmed.

{¶2} On March 16, 2011, the Wyandot County Grand Jury returned a two-count indictment against Drummond for aggravated trafficking in drugs (Methadone), in an amount greater than bulk but less than five times bulk, in violation of R.C. 2925.03(A)(1), both felonies of the third degree. The indictment resulted from Drummond selling Methadone pills, a Schedule II controlled substance, to a confidential informant on October 4th and October 15th in 2010.

{¶3} A two-day jury trial was held on July 26 and 27, 2011. Deputy Richard Kesler, a deputy sheriff for the Wyandot Sheriff's Department for more than twenty years, testified about the two drug buys that occurred when Danica, a confidential informant who had been working for the sheriff's department, purchased Methadone pills from Drummond in two arranged drug buys on

October 4 and 15, 2010. (Tr. p 70) Deputy Kesler testified that Danica and Drummond made arrangements to meet at an agreed upon location for each buy. Prior to the meetings, Danica and her vehicle were thoroughly searched to be sure she did not have any drugs or contraband on her. She was given $300 in bills (that were photocopied for identification) and the plan was to buy fifty Methadone pills with the money. Danica was also fitted with a wire, both for safety and so that their conversations could be monitored and recorded. Deputy Kesler testified about how he waited nearby and listened during the drug buys; about what he heard and was able to see; and that Danica turned over to him the bag containing the Methadone pills immediately after each buy was concluded. Recordings of both of the transactions were played for the jury and admitted into evidence. (*See* Exhibits 1 and 2)

{¶4} Deputy Kesler testified that he arrested Drummond on March 19, 2011. He did not arrest him sooner because they wanted to continue to utilize Danica as a confidential informant for other drug buys, and their ability to do so would be compromised once Drummond was arrested and he learned of Danica's role.

{¶5} Danica then testified and explained in detail how she came to be used as a confidential informant and freely admitted that she was doing it for the money, as she was usually paid $100 for each drug buy. (Tr. p. 114) She testified

concerning the details of each of the drug buys, including the locations, how the arrangements were made, the conversations she had with Drummond, and how she would give Drummond $300 and he would hand her the pills in a plastic bag.

{¶6} Chief Richard Blankenship of the Sycamore Police Department also testified about his participation in the drug buys. (Tr. p. 165) Chief Blankenship, who had just recently been promoted to chief, had been the police officer who worked closely with Deputy Kesler and Danica in October of 2010 for the drug buys, and was present during both of them. The chief confirmed and added to the facts and details of their testimony, including all of the procedures that were followed, both before and afterwards, to ensure that there was no doubt that the drugs had come from Drummond.

{¶7} Lieutenant Todd Frey of the Wyandot County Sheriff's Department was in charge of the evidence room, and he testified as to the security in the evidence room and the procedures used to safeguard the evidence and keep track of the chain of custody. (Tr. p. 186) Lt. Frey identified the two packages of pills, State's Exhibits 3 and 4, containing 50 and 46 pills[1] respectively, as the evidence that was received and logged in from the two October drug buys. Lt. Frey further testified that the drugs were sent to the Mansfield Police Forensic Science

---

[1] There were supposed to be 50 pills purchased at each of the drug buys, but only 46 pills were received on October 15th. There was testimony that it was not uncommon for a purchase to be "shorted" at times. Danica testified that she only pretended to actually count the pills when she was with Drummond, and didn't realize that there were fewer pills.

-4-

Laboratory for testing. The laboratory report identified the two bags of pills, and the results of the examination on the contents were as follows:

> #1: 50 white tablets, weighing 6.21 grams, were found to contain Methadone, a Schedule II controlled substance.
>
> #2: 46 white tablets, weighing 5.72 grams, were found to contain Methadone, a Schedule II controlled substance.

The laboratory report was admitted into evidence, by agreement of both parties, as Joint Exhibit 1. (Tr. pp. 189-90)

{¶8} Robert Amiet, Jr., a pharmacist employed by the Ohio State Board of Pharmacy, testified about how controlled substances in general are classified, how they are weighed and measured, how the "bulk amount" of controlled substances is determined, and how Methadone tablets are classified. (Tr. pp. 146-155) The trial court agreed to allow Mr. Amiet to testify as an expert witness after he gave a summary of his education, qualifications, credentials, and experience, which included: a Bachelor's degree in pharmacy and a Master's degree in business administration; over twenty-four years of employment with the Ohio State Board of Pharmacy; lecturer for the Board of Pharmacy on the drug laws of Ohio that pertain to pharmacy; author of The Controlled Substance Reference Table for the Board of Pharmacy; membership in several professional organizations in his field; and designation as an expert witness in numerous state and federal court cases. (Tr. pp. 147-151)

{¶9} Mr. Amiet was shown the State's two exhibits containing the pills purchased by Danica and asked to identify them. (Tr. p. 152) Based on their markings and color, he identified the pills as a Methadone, 5 mg. tablets. (Tr. p. 153) Mr. Amiet then discussed many of the properties and characteristics of Methadone and explained why they were categorized as a Schedule II substance. The State then asked Mr. Amiet if he could explain whether the amount of these bags of pills, each separately, constituted a bulk amount of Methadone. (Tr. p. 156) Mr. Amiet explained that by either doing the mathematics, or referring to the table, thirty 5 mg. tablets of Methadone constituted a bulk amount for that particular type of drug. (Tr. pp. 156-161) The Report of Investigation that Mr. Amiet created as a result of his examination of these drugs was also admitted into evidence, without objection, as State's Exhibit 6, and stated:

> This Specialist identified the white tablets with the imprint "M5755" as methadone 5 mg. tablets, a Schedule II Controlled Substance. (Attachment #1). The Mansfield Forensic Science Lab confirmed, by chemical analysis, that the white tablets with imprint "M5755"contain methadone (Attachment #2).
>
> Pursuant to Section 2925.01(D), ORC, the definition of Bulk Amount, this Specialist determined the Bulk Amount of methadone 5 mg. tablets is thirty (30) tablets. This is further documented in the *Controlled Substance Reference Table* (Attachment #3).
>
> Pursuant to the definition of Bulk Amount, the "maximum daily dose in the usual dose range specified in a standard pharmaceutical reference manual" was taken from the *American Hospital Formulary Service Drug Information* (Attachment #4). The *American Hospital*

*Formulary Service Drug Information* is a standard pharmaceutical reference as defined in Section 5729-11-07, OAC (Attachment #5).

{¶10} After each of the State's witnesses testified, Drummond's attorney thoroughly cross-examined each witness and posed questions to attempt to raise issues as to their credibility, motivation, consistency, and any other matters that could possibly raise doubt in the jurors' minds. Drummond's attorney also moved for a Crim.R. 29 motion for acquittal at the close of the State's case, which was denied by the trial court.

{¶11} The jury found Drummond guilty on both counts of trafficking in drugs as charged in the indictment, and it also found that the amount of drugs involved in each offense was equal to or greater than the bulk amount. The sentencing hearing was held on August 24, 2011, and the trial court sentenced Drummond to a mandatory two-year prison term on each count, with the sentences to be served consecutively to each other. It is from this judgment that Drummond now appeals, raising the following four assignments of error for our review.

**First Assignment of Error**

**The trial court erred in admitting the testimony of Robert Amiet, instructing the jury on portions of the Ohio Revised Code testifying on what constitutes a bulk amount of a controlled substance.**

**Second Assignment of Error**

**The trial court erred in admitt[ing] the laboratory report of the drug analysis as it was not supported by a sufficient foundation as a business record.**

-7-

**Third Assignment of Error**

**[Drummond] was denied his right to a fair jury trial by virtue of his trial court counsel rendering ineffective assistance of counsel.**

**Fourth Assignment of Error**

**The conviction of Drummond is against the manifest weight of the evidence.**

*First Assignment of Error – Testimony concerning "bulk" amount*

**{¶12}** In his first assignment of error, Drummond asserts that the trial court erred in allowing Mr. Amiet to testify that the drugs in this case exceeded the bulk amount. He claims that such a determination went to an essential element of the offense and that it was up to the jury to determine whether or not the drugs constituted a bulk amount, not Mr. Amiet.

**{¶13}** Drummond acknowledges that there was no objection to Mr. Amiet's testimony, his report, or the jury instructions, so he has waived all but plain error on this matter. *See State v. Johnson*, 164 Ohio App.3d 792, 2005–Ohio–6826, ¶ 53. Plain error does not exist unless it can be said that, but for the error, the outcome would clearly have been different. *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978). Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. *Id.*

{¶14} Drummond cites to three cases that he claims stands for the proposition that "it is the court's obligation to advise the jury as to the law," and therefore, he claims that "the trial court failed to instruct the jury as to the law and its obligations were usurped by the admission of the testimony of Mr. Amiet." (Appellant's Br. p. 6) *See State v. Feltner*, Miami App. No. 88-CA-34, 1989 WL 94550; *State v. Morales*, 5th Dist. 2004-CA-68, 2005-Ohio-4714; *State v. Fisher*, 5th Dist. CAA 04 20, 2006-Ohio-2201. However, Drummond misstates the findings in those cases and takes them out of context. The issue in all three of those cases was that the defendant was complaining that there was not any or not enough expert testimony to establish that they were in possession of a bulk amount of a controlled substance. *Feltner* ("Appellant argues that the court was required to have testimonial or other verified proof that cocaine is a 'controlled substance' and as to the definition of 'bulk amount.'"); *Morales* at ¶ 53 ("Appellant further argues that because there was no testimony as to bulk amount, the jury erred in convicting him of possession of 100 times the bulk amount."); *Fisher* at ¶ 13 ("Appellant maintains the state was required to present testimonial evidence of the maximum daily dosage of Oxycontin as specified in a standard pharmaceutical reference manual.")

{¶15} The decisions in the cases relied upon by Drummond stated that the jury instructions given were *sufficient* and met the requirements of the law. *Id.*

Further testimony by experts in those cases was not *required*, but there was nothing that would indicate that it would have been prohibited. *Id.*

{¶16} There are numerous cases where the State has presented expert testimony, similar to the testimony in this case, in order to provide information to the jury as to the classification of controlled substances, and such testimony has been upheld on appeal. *See, e.g., State v. Bange*, 4th Dist. No. 10CA3160, 2011-Ohio-378, ¶5; *State v. Brown*, 12th Dist. CA2003-02-004, 2004-Ohio-424, ¶ 7; *State v. Hamlin*, 5th Dist. No.2002CA00162, 2003-Ohio-544, ¶12. In fact, in the three examples cited, *Bange, Brown,* and *Hamlin*, Mr. Amiet was the expert witness providing testimony very much like he gave in this case. *See id.*

{¶17} The trial court properly instructed the jury concerning the law and the definition of bulk amount. (*See* Tr. p. 239) In addition, Mr. Amiet explained what was required in order to determine what constitutes a bulk amount of drugs. Pursuant to the mathematical formulas and the pharmaceutical tables, in this case a bulk amount of these drugs constituted thirty pills. He never testified as to whether or not the quantity of pills sold by Drummond actually *was* a bulk amount, but the jury was able to use the information provided to make that determination. In any case, Evid.R. 704, concerning the testimony of expert witnesses, provides that opinion evidence is not objectionable solely because it

embraces an ultimate issue of fact. *See, also, State v. Stowers*, 81 Ohio St.3d 260, 261, 1998-Ohio-632.

{¶18} Without the assistance of an explanation of the definition of bulk amount, it would be very difficult for laypersons to understand what constitutes the bulk amount of various controlled substances. Mr. Amiet, given his experience, training and skill, testified appropriately and assisted the State in providing information on the determination of a bulk amount. Because Mr. Amiet authored the Controlled Substance Reference Table, he was a most appropriate person to explain its meaning. Drummond's first assignment of error is overruled.

*Second Assignment of Error – Admission of drug analysis lab report*

{¶19} Drummond's second assignment of error argues that the introduction of the Mansfield Police Forensic Science Laboratory Drug Analysis Report (Joint Exhibit 1) was not properly admitted because of a lack of sufficient foundation as a business record, citing to *State v. Crager*, 166 Ohio St.3d 369, 2007-Ohio-6840, judgment vacated and remanded, 123 Ohio St.3d 1210, 2009-Ohio-4760, and that its admission without the testimony of the person conducting the analysis violated his rights under the confrontation clause, citing to *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009).

{¶20} First, we note that Drummond failed to object to the admission of the report, again waiving all but plain error. *See, Lang*, 129 Ohio St.3d 512, *supra*.

Not only did Drummond fail to object to the introduction of the drug analysis report prepared by Anthony Tambasco, but he joined with the State in the introduction of the document as a joint exhibit.

{¶21} It is well-established that an attorney may waive a client's Sixth Amendment right to confrontation. *State v. Pasqualone*, 121 Ohio St.3d 186, 2009-Ohio-315, at paragraph one of the syllabus; *Melendez-Diaz*, 129 S.Ct. at 2534, fn. 3. A defendant may also waive the opportunity to cross-examine a laboratory analyst at trial and allow the report to be admitted as prima facie evidence of the test results. *Pasqualone* at paragraph two of the syllabus.

{¶22} In this case, Drummond's attorney originally requested that the laboratory analyst appear at trial pursuant to his rights under R.C. 2925.51. However, at some point, he no longer chose to pursue that right and agreed to admit the laboratory report as a joint exhibit, without any further foundation. Therefore, any error that resulted from the introduction of the document would be invited error. The doctrine of invited error holds that a litigant may not "take advantage of an error which he himself invited or induced." *State v. Campbell*, 90 Ohio St.3d 320, 324, 2000-Ohio-183, citing to *Hal Artz Lincoln–Mercury, Inc. v. Ford Motor Co.*, 28 Ohio St.3d 20 (1986), paragraph one of the syllabus. Drummond cannot expect to benefit on appeal, given that he participated in the admission of the document.

**{¶23}** Furthermore, the information concerning the drugs that was contained in the report was already testified to by another expert witness, Mr. Amiet, and was included in his investigative report, admitted as State's Exhibit 6. Therefore, the information contained in the laboratory report was already properly before the jury. Requiring a second expert witness to identify the drug and introduce the drug test results would have been redundant. There is no indication that such testimony would have affected the outcome of the trial in any way. By agreeing to the introduction of the drug test results, the defense merely eliminated the necessity that the State call a second expert witness to testify. Drummond's second assignment of error is overruled.

*Third Assignment of Error – Ineffective assistance of counsel*

**{¶24}** Drummond contends that his trial counsel's performance was ineffective and fell below the minimum standards. He cites to three specific areas where he claims trial counsel's performance was ineffective: (1) in failing to object to Mr. Amiet's testimony; (2) in allowing the admission of the drug analysis laboratory report as a joint exhibit without a proper foundation; and, (3) in failing to question the jurors during voir dire "as to any particular bias' or lack thereof." (Appellant's Brief, p. 10) Drummond asserts that his counsel's actions cannot be excused as being a "trial tactic."

{¶25} We have already discussed the testimony of Mr. Amiet in the first assignment of error, and found that there was no error in allowing his testimony. Therefore, Drummond's counsel could not have been ineffective for failing to object to his testimony.

{¶26} The decision to admit the laboratory report as a joint exhibit was likely a tactical decision done so as to not require the State to call a second expert witness to further drive home the point that the drugs involved in the case constituted a bulk amount of methadone. And, as stated above, that information was already before the court, and the State could have easily reinforced Mr. Amiet's testimony with a second expert witness. We find no error in this trial tactic.

{¶27} And finally, Drummond complains that his counsel failed to question the potential jurors during voir dire. Drummond asserts that while "the Court asked a series of questions on voir dire and the State also asked questions of a number of potential jurors, the Defendant's counsel was silent, declining to make inquiries." (Appellant's Br. p. 10)

{¶28} We find that there is no merit in this last assertion because: (1) the record disproves Drummond's claim that his counsel "was silent"; and, (2) it was evident from the record that his counsel's choice of questioning was a trial technique.

{¶29} It is an accepted fact that "voir dire is largely a matter of strategy and tactics * * *." *State v. Keith*, 79 Ohio St.3d 514, 521, 1997-Ohio-367. "Debatable trial tactics generally do not constitute a deprivation of effective counsel." *State v. Phillips*, 74 Ohio St.3d 72, 85, 1995-Ohio-171, citing *State v. Clayton*, 62 Ohio St.2d 45, 49 (1980). "The conduct of voir dire by defense counsel does not have to take a particular form, nor do specific questions have to be asked." *State v. Evans* (1992), 63 Ohio St.3d 231, 247 (1992). Additionally, we give deference to decisions by trial counsel during voir dire because trial counsel sees and hears jurors and is in the best position to determine whether voir dire questions are needed. *State v. Sanders*, 92 Ohio St.3d 245, 274, 2001-Ohio-189, citing *State v. Bradley*, 42 Ohio St.3d 136, 143 (1989).

{¶30} There was no need for Drummond's counsel to ask many questions because the trial court and the State had already asked most of the basic and fundamental questions necessary to determine whether any of the jurors had any impermissible bias or prejudice, or any other issues that would interfere with their service as a juror. (Tr. pp. 6-36) And, contrary to Drummond's assertions, his counsel *did* address the jurors and pose questions. (Tr. pp. 36-39) It was clear that his *intention* was to be brief, as he promised the jurors that he would "be brief" in order to avoid them getting that "glassy-eyed look" that might come from lawyers talking too much. (Tr. p. 36) However, in his brief discourse, his

counsel: complimented the jury on the life experiences and common sense that they brought to the procedures; discussed the importance of making independent decisions; asked whether there was anyone who was not capable of making an individual choice to vote their conscience, even if it meant being the lone dissenter; and, he questioned them as to whether they would be able to vote "not guilty" if that was what they truly believed, even though the defendant had been arrested and charged by the State. (Tr. pp. 37-38)

{¶31} We find no deficient performance in Drummond's trial counsel's conduct during voir dire. It is clear that his choice to limit his questioning was a planned trial tactic. Therefore, based on all of the above, the third assignment of error is overruled.

*Fourth Assignment of Error – Manifest Weight*

{¶32} In his final assignment of error, Drummond argues that the jury's verdict was against the manifest weight of the evidence. Drummond claims that, based upon the improper admission of Mr. Amiet's testimony and the improper admission of the laboratory report, the conviction cannot be sustained because both of those arguments go to the essential elements of the offense and the conviction cannot be sustained without that evidence.

{¶33} In determining if a conviction is against the manifest weight of the evidence, an appellate court "review[s] the entire record, weighs the evidence and

all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Mendoza*, 137 Ohio App.3d 336, 346–347 (3d Dist.2000), quoting *State v. Martin*, 20 Ohio App.3d 172, 175, (1st Dist.1983); *see, also, State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). A new trial should be granted only in the exceptional case in which the evidence weighs heavily against conviction. *Thompkins* at 387.

{¶34} Although the appellate court acts as a "thirteenth juror," it still must give due deference to the findings made by the fact-finder. *State v. Thompson*, 127 Ohio App.3d 511, 529 (8th Dist.1998). The fact-finder, being the jury, occupies a superior position in determining credibility. *Id*. When examining witness credibility, "[t]he choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact." *State v. Awan*, 22 Ohio St.3d 120, 123 (1986). To reverse the judgment of a trial court on the weight of the evidence based upon a jury's verdict, a unanimous concurrence of all three judges on the reviewing panel is required. *Thompkins*, at paragraph four of the syllabus.

{¶35} Drummond's arguments concerning this assignment of error fail for at least two reasons. First, based upon our findings in the first and second assignments of error, the admission of Mr. Amiet's testimony and the admission of the laboratory report were not in error. Therefore, this evidence could certainly be utilized in determining Drummond's guilt. Furthermore, the jury's verdict was supported by a considerable amount of additional evidence. Two experienced law enforcement officers and the confidential informant all presented strong and consistent testimony that would support a finding that Drummond was guilty of trafficking in the drugs. And, their testimony was further reinforced by the recordings of the drug transactions.

{¶36} The weight of the evidence was greatly in favor of the State. Drummond's fourth assignment of error is overruled.

{¶37} Having found no error prejudicial to the Appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**PRESTON and ROGERS, J.J., concur.**

**/jlr**