[Cite as *State v. Bange*, 2011-Ohio-378.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | : | |
| Plaintiff-Appellee, | : | Case No: 10CA3160 |
| | : | |
| v. | : | |
| | : | DECISION AND |
| SETH A. BANGE, | : | JUDGMENT ENTRY |
| | : | |
| Defendant-Appellant. | : | File-stamped date:  1-25-11 |

_____

APPEARANCES:

Lori J. Rankin, Chillicothe, Ohio, for Appellant.

Michael Ater, Ross County Prosecuting Attorney, and Richard W. Clagg, Ross County
Assistant Prosecuting Attorney, Chillicothe, Ohio, for Appellee.

_____

Kline, J.:

{¶1}     Seth A. Bange appeals his conviction for aggravated possession of

Oxycodone.  Bange contends both that his conviction is not supported by sufficient

evidence and that his conviction is against the manifest weight of the evidence.  For

both of these issues, Bange contends that the State did not present evidence of the bulk

amount of extended release Oxycodone tablets.  We, however, find that the State's

expert specifically testified as to the bulk amount of extended release Oxycodone

tablets.  And using State's Exhibit 1, the same expert explained his reasoning.  As such,

we find that Bange's conviction is supported by sufficient evidence, and we find that

Bange's conviction is not against the manifest weight of the evidence.  Accordingly, we

affirm the judgment of the trial court.

I.

{¶2}     On May 1, 2008, detectives from the Ross County Sheriff's office, along with other members of the U.S. Route 23 Drug Task Force, served a search warrant in Ross County, Ohio.  Among other areas searched, the officers searched a car rented by Shanelle Graves.  Graves and Bange had driven the car from Columbus to Ross County.

{¶3}     When the officers searched the car, they discovered a sock under the front driver's seat.  Inside the sock were two baggies.  The second baggie contained 81 tablets.  At trial, an expert from Ohio's Bureau of Criminal Identification and Investigation testified that the tablets weighed 23.7 grams and contained Oxycodone.

{¶4}     The State also produced a forensic scientist from the Forensic Biology and DNA Section of Ohio's Bureau of Criminal Identification and Investigation.  This expert testified that he had tested samples from Bange as well as the sock found in the car. And he testified that the DNA samples taken from the sock were consistent with Bange's DNA profile.

{¶5}     Finally, the State produced Robert H. Amiet.  Amiet is a pharmacist who works as a compliance specialist with the Ohio State Board of Pharmacy.  Amiet identified the tablets as Oxycodone extended release tablets with a strength of 40 mg. And he testified that the bulk amount for 40 mg Oxycodone tablets was 12 tablets.

{¶6}     After trial, the jury convicted Bange of aggravated possession of Oxycodone in an amount equal to or exceeding five times the bulk amount but less than 50 times the bulk amount in violation of R.C. 2925.11(C)(1)(c), a felony of the second degree.

The trial court then sentenced Bange to four years incarceration based on his conviction, with a mandatory three-year term of post-release control.

{¶7}    Bange appeals and assigns the following two errors for our review: I. "IN VIOLATION OF DUE PROCESS, MR. BANGE WAS FOUND GUILTY OF AGGRAVATED POSSESSION OF OXYCODONE WHEN SUCH A FINDING WAS NOT BASED ON SUFFICIENT EVIDENCE."  And, II. "IN VIOLATION OF DUE PROCESS, MR. BANGE WAS FOUND GUILTY OF AGGRAVATED POSSESSION OF OXYCODONE WHEN SUCH A FINDING WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

II.

{¶8}    For both assignments of error, Bange contends that the State "failed to prove the bulk amount for [O]xycodone extended release tablets."  Bange's Brief at 4.  As such, we will initially explain the significance of the bulk amount before specifically addressing Bange's sufficiency and manifest weight arguments.

{¶9}    Under the statute that prohibits possession of illicit drugs, the level of offense is dependant on the amount and type of drugs possessed.  The relevant drug in this case, Oxycodone, is a schedule II controlled substance.  R.C. 3719.41 SCHEDULE II (A)(1)(n).  Specifically, the statute relies on multiples of the "bulk amount" and determines for a schedule II substance that the offense may be a fifth-degree felony, a third-degree felony, a second-degree felony, or a first-degree felony depending on how many multiples of the bulk amount the offender possessed.  See R.C. 2925.11(C)(1)(a)–(e).

{¶10}     In relevant part, the bulk amount of a controlled substance means "[a]n amount equal to or exceeding * * * five times the maximum daily dose in the usual dose range specified in a standard pharmaceutical reference manual[.]"  R.C. 2925.01(D)(1)(d).  Bange claims that the State failed to produce evidence of the bulk amount specifically for extended release tablets.  At trial, Amiet produced pages from a standard pharmaceutical reference manual (State's Exhibit 1), specifically American Hospital Formulary Service Drug Information.  The Ohio Pharmacy Board has recognized and approved this work.  Ohio Adm.Code 4729-11-07(F).

{¶11}     The manual or work, however, contains two relevant listings for Oxycodone. The first is a general listing for "Oxycodone Hydrochloride Tablets USP" ("non-extended-release-tablet listing").  The second listing is specifically for "Oxycodone Hydrochloride Extended-Release Tablets" ("extended-release-tablet listing").  And each listing has a different entry for the usual adult dose.

{¶12}     The non-extended-release-tablet listing states that the usual adult dose is "2 to 15 mg every 4 to 6 hours as needed; may be increased if severe pain is present." The extended-release-tablet listing states that "[d]osage must be individualized by the physician according to the severity of pain and patient response. * * * **The 80-mg and 160-mg dose should be used in opioid tolerant patients only.**  Fatal respiratory depression may occur in patients who have not previously received opioids." (Emphasis in original).  Amiet specifically testified that "the bulk amount for the Oxycodone, extended release tablet, forty milligrams is twelve tablets."  Trial Transcript, Day Two, at 34.  Amiet based this conclusion on the usual dose entry of the non-extended-release-tablet listing.  Amiet stated that the maximum usual daily dose was 15

mg every four hours.  Under this dosage, a patient would ingest 90 mg of Oxycodone daily.  Five times this amount is 450 mg, and we then divide this amount by 40 mg, for each tablet.  This calculation indicates that 11.25 tablets are required to equal the bulk amount.  Amiet rounded this figure up to 12 tablets in Bange's favor.  Bange contends that this fails to establish the bulk amount for extended-release tablets.

### A. Sufficiency of the Evidence

{¶13}     In his first assignment of error, Bange contends that insufficient evidence exists to support his conviction.  When reviewing a case to determine whether the record contains sufficient evidence to support a criminal conviction, our function "is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt.  The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."  *State v. Jenks* (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, superseded on other grounds.  See, also, *Jackson v. Virginia* (1979), 443 U.S. 307, 319.

{¶14}     This test raises a question of law and does not allow the court to weigh the evidence.  *State v. Martin* (1983), 20 Ohio App.3d 172, 175.  Rather, this test "gives full play to the responsibility of the trier of fact * * * to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."  *Jackson* at 319.  Accordingly, the weight given to the evidence and the credibility of witnesses are issues for the trier of fact.  *State v. Thomas* (1982), 70 Ohio St.2d 79, 79-80; *State v. DeHass* (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.

{¶15}    In reviewing the evidence, we have little difficulty in determining that the State produced sufficient evidence of the bulk amount.  The State produced an expert witness who testified that the bulk amount for 40 mg extended-release tablets was twelve tablets.  The State's witness relied on a standard pharmaceutical manual to reach this conclusion.  Bange's argument that Amiet should have relied on the extended-release-tablet listing rather than the non-extended-release-tablet listing goes to weight and not admissibility.  As such, considering Amiet's testimony and construing the evidence in favor of the prosecution, we find that Bange's conviction is supported by sufficient evidence.

{¶16}    Accordingly, we overrule Bange's first assignment of error.

B. Manifest Weight of the Evidence

{¶17}    In his second assignment of error, Bange contends that his conviction is against the manifest weight of the evidence.  When determining whether a criminal conviction is against the manifest weight of the evidence, we "will not reverse a conviction where there is substantial evidence upon which the [trier of fact] could reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt."  *State v. Eskridge* (1988), 38 Ohio St.3d 56, paragraph two of the syllabus.  See, also, *State v. Smith*, Pickaway App. No. 06CA7, 2007-Ohio-502, at ¶41.  We "must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial granted."  *Smith* at ¶41, citing *State v. Garrow* (1995), 103 Ohio App.3d 368, 370-71; *State v.*

*Martin* (1983), 20 Ohio App.3d 172, 175. "The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin* at 175 (citations omitted).

**{¶18}** "Even in our role as thirteenth juror we are constrained by the rule that the weight to be given evidence and the credibility to be afforded testimony are normally issues to be determined by the trier of fact. * * * The fact finder is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony. * * * Thus, we will only interfere if the fact finder clearly lost its way and created a manifest miscarriage of justice." *State v. Davis*, Washington App. No. 09CA28, 2010-Ohio-555, at ¶13 (citations within quote omitted).

**{¶19}** After reviewing the record, we find that there is substantial evidence in the record supporting Bange's conviction. Bange essentially contends that the jury should not have credited Amiet's testimony establishing the bulk amount because he relied on the non-extended-release-tablet listing. However, the listings in the manual (State's Exhibit 1) provide sound reasons for Amiet's conclusions.

**{¶20}** Based on the language of the extended-release-tablet listing, it is not clear whether the listing even provides a maximum usual daily dose for extended-release tablets because the listing merely states that the dosage must be individualized. Under these circumstances, we see no reason why a pharmacist cannot determine that another listing provides a sufficient basis for stating the maximum daily dose in the usual dose range.

**{¶21}**    Also, the language of the extended-release-tablet listing in the manual (again, as we stated earlier, State's Exhibit 1) indicates that the 80 and 160 mg doses are for individuals who have developed an opioid tolerance.  Likely, these doses would not be considered within the usual dose range because most patients, presumably, have not developed an opioid tolerance.  The extended-release-tablet listing also indicates that the next smallest dosage from 80 mg is the 40 mg tablet.  The listing also provides that one tablet should be taken every twelve hours.  The most plausible interpretation of the extended-release-tablet listing is that the maximum daily dose in the usual range is two 40 mg tablets.  The bulk amount of a drug is five times the maximum daily dose in the usual dose range.  R.C. 2925.01(D)(1)(d).  Therefore, this listing likely indicates that the bulk amount is ten 40 mg tablets rather than twelve.

**{¶22}**    We hasten to add that we do not hold that Amiet should have used the extended-release-tablet listing.  Rather, we merely point out that the difference between the two entries is slight, and there is no reason to believe use of the extended-release-tablet listing would have any effect on the outcome of this case.  We conclude that it is well with the expertise of a pharmacist to choose which listing was the more appropriate one.  We find that substantial evidence supported the jury's verdict that Bange possessed more than five times the bulk amount of Oxycodone.

**{¶23}**    Accordingly, we overrule Bange's second assignment of error.

III.

**{¶24}**    Having overruled both of Bange's assignments of error, we affirm the judgment of the trial court.

**JUDGMENT AFFIRMED.**

Harsha, J., concurring in judgment only:

**{¶25}** As an initial matter, I conclude there is no merit to the State's assertion that Bange waived the sufficiency of the evidence argument by failing to renew his Crim.R. 29(A) motion. See by analogy, *State v. Cooper*, 170 Ohio App.3d 418, 2007-Ohio-1186, at ¶13 (failure to move for judgment of acquittal does not waive a sufficiency argument on appeal), citing *State v. Jones* (2001), 91 Ohio St.3d 335, 446, and *State v. Carter* (1997), 64 Ohio St.3d 218.223.

**{¶26}** As for the merits, I conclude the State's expert was not free to substitute the dosage specification of the regular tablet form of oxycodone hydrochloride for the dosage specifications of the extended-release version of the drug. As the principal opinion points out, R.C. 2925.01(D)(1) provides the "bulk amount" of oxycodone hydrochloride is an "amount equal to or exceeding * * * five times the maximum daily dose in the usual dose range specified in a standard pharmaceutical reference manual." State's Exhibit 1 is a photo copy of two pages from a source that a State's witness identified as being such a manual. Under the heading "Oral Dosage Forms," the exhibit identifies three distinct forms of orally administered oxycodone: 1) oral solution; 2) tablets; and 3) extended-release tablets. Each form of oxycodone has a separate subheading captioned "Usual Adult Dose," which is specific to that form of the drug. For instance, in the oral solution form, the usual adult does is specified as "5 mg every three to six hours as needed." Thus, the maximum daily does in the usual dose range for the oral solution is 5 mg x 8 (24 hr. ÷ 3 hr. interval) = 40 mg. However, the usual adult dose for the regular tablet form of oxycodone is specified as "5 to 15 mg. every 4 to 6 hours as needed." Thus, the maximum daily dose in the usual dose range for this form of

oxycodone is 15 mg. x 6 (24 hr. ÷ 4 hr. interval) = 90 mg.  Comparing the two forms, it is clear that they do not have the same dosage rates and are not interchangeable.

**{¶27}**      When we look at the Usual Adult Dose for the extended-release form of the oxycodone tablets, we see the instruction "Oral, administer dose every 12 hours."  We must then read the accompanying "Note(s)" to determine what the maximum daily dose in the usual dose range is.  The first Note indicates the dosage must be individualized by the physician according to patient response.  It also instructs that the extended release form is not intended for use as an "as needed" analgesic.  Finally, it indicates that in order to avoid potentially fatal reactions, the 80 and 160 mg. doses are only appropriate for patients who have developed an opioid tolerance.  This information must be considered in conjunction with the information provided in another subheading called "Strength(s) usually available."  There the manual lists 10 mg., 20 mg., 40 mg., 80 mg., and 160 mg. as being usually available in the United States.  When these available strengths are considered with the note instructing doctors to limit use of the two high-strength versions of the tablet, it is obvious that 40 mg. of extended-release oxycodone is the usual adult dose.  And because it can be administered every 12 hours, or 2 times a day, the maximum daily dose in the usual dose range for this form of the drug is 80 mg., not 90 mg. as the principal opinion and the State's expert suggest.

**{¶28}**      In sum, the manual lists three different forms of oral oxycodone, each having its own maximum dose in the usual dose range.  Those dosages are not interchangeable.  Nonetheless, based on Exhibit 1, it is apparent that the bulk amount for extended-release oxycodone is 400 mg. (5 times the maximum daily dose in the usual dose range).  And in its 40 mg. extended-release form, it takes only 10 tablets to

equal or exceed five times the bulk amount. The State's expert incorrectly testified that 12 tablets would equal or exceed five times the bulk amount. This testimony actually overstated the prohibited amount and worked to the appellant's benefit, i.e. it was harmless. And because Exhibit 1 was properly introduced before the jury, the State's evidence satisfied both the sufficiency and manifest weight of the evidence burdens. Thus, I concur in judgment.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED, and Appellant shall pay the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Ross County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.  Exceptions.

Harsha, P.J.:  Concurs in Judgment Only with Opinion.
McFarland, J.:  Concurs in Judgment Only.

For the Court

BY:_____
   Roger L. Kline, Judge

## **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**