[Cite as *State v. Whitfield*, 2012-Ohio-5019.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

| STATE OF OHIO | C.A. No. 11CA010048 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| CEDRIC WHITFIELD | COURT OF COMMON PLEAS COUNTY OF LORAIN, OHIO |
| Appellant | CASE No. 09CR077938 |

DECISION AND JOURNAL ENTRY

Dated: October 29, 2012

WHITMORE, Presiding Judge.

{¶1} Defendant-Appellant, Cedric Whitfield, appeals from his convictions in the Lorain County Court of Common Pleas. This Court affirms.

I

{¶2} On March 11, 2009, Patrolman Michael Groomes of the Elyria Police Department, Detective A.J. Mathewson of the Lorain Police Department, and Special Agent Perry were assigned to the Northern Ohio Violent Fugitive Task Force. The three officers were traveling in an unmarked police car and were being followed by another unmarked car, carrying three additional Task Force officers.

{¶3} Patrolman Groomes and Detective Mathewson testified that while they were in route to another location they witnessed a car cross the center line two or three times before making an abrupt right hand turn from the left turn lane. The officers believed the driver was under the influence of drugs or alcohol. Detective Mathewson pulled behind the car and

activated his lights and siren. The driver, the sole occupant in the car, appeared to stuff something in between the driver's seat and the center console then jumped out of the car and began approaching the officers' car. Patrolman Groomes and Detective Mathewson testified that this conduct was unusual and caused them to become concerned for their safety. The officers exited their vehicle and ordered the driver to stop and show his hands. Neither of the officers remembered guns being drawn, but did testify that it was possible.

{¶4} Detective Mathewson obtained the driver's license, which identified him as Whitfield. Patrolman Groomes and Detective Mathewson testified that Whitfield's voice and hands were shaking and that he appeared to be very nervous. Patrolman Groomes then asked Whitfield if he had any weapons or drugs on him or in his car, to which he responded "No." Patrolman Groomes then asked Whitfield if he could search the car, and Whitfield replied, "Go ahead."

{¶5} Detective Mathewson then "stuck [his] head in the window and [] observed a pill bottle stuffed between the driver's seat and the center console, where [Whitfield] was observed to be stuffing something when [the stop was] effected." The pill bottle contained 89 oxycodone pills, each 80 milligrams. Whitfield told the officers that he had been prescribed the pills for back pain, but the bottle did not have a label affixed to it and Whitfield could not name the pharmacy where he had his alleged prescription filled. The officers placed Whitfield under arrest and issued him a citation for the traffic violation.

{¶6} Whitfield was indicted on possession of five times the bulk amount of oxycodone, in violation of R.C. 2925.11(A), a felony of the second degree; and possession of drug paraphernalia, in violation of R.C. 2925.14(C)(1), a fourth degree misdemeanor. Whitfield filed a motion to suppress, arguing that his consent to the search of his vehicle was not freely and

voluntarily given. After a hearing, the trial court denied his motion. Whitfield tried his case to the court, was found guilty on both charges, and sentenced to two years in prison. Whitfield now appeals and raises three assignments of error for our review.

II

Assignment of Error Number One

THE TRIAL COURT ERRED IN NOT SUPPRESSING THE EVIDENCE INTRODUCED AGAINST WHITFIELD. THE COURT APPLIED AN INCORRECT LEGAL STANDARD IN DETERMINING THAT CONSENT TO SEARCH WAS GIVEN. THE COURT INCORRECTLY SHIFTED THE BURDEN OF PROOF TO WHITFIELD TO PROVE THAT THE CONSENT WAS NOT FREELY GIVEN.

{¶7} In his first assignment of error, Whitfield argues that the court erred in denying his motion to suppress because the State failed to meet its burden in proving that his consent was freely and voluntarily given.

> Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. *State v. Mills*, 62 Ohio St.3d 357, 366 (1992). Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Fanning*, 1 Ohio St.3d 19 (1982). Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard. *State v. McNamara*, 124 Ohio App.3d 706 (4th Dist.1997).

*State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. This Court, therefore, will first review the trial court's findings of fact to ensure those findings are supported by competent and credible evidence. This Court will then review the trial court's legal conclusions de novo.

{¶8} The Fourth Amendment of the United States Constitution protects persons against unreasonable searches and seizures. "Although the Fourth Amendment recognizes that individuals have privacy interests in their vehicles, the inherent characteristics of vehicles

'justif[y] a lesser degree of protection of [the privacy] interests [in them].'" *State v. Friedman*, 194 Ohio App.3d 677, 2011-Ohio-2989 (9th Dist.), ¶ 7, quoting *California v. Carney*, 471 U.S. 386, 390 (1985). "If a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment thus permits police to search the vehicle without more." *Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996). *Accord Friedman* at ¶ 13; *State v. Underwood*, 12th Dist. No. CA2003-03-057, 2004-Ohio-504, ¶ 17; *State v. Lang*, 117 Ohio App.3d 29, 36 (1st Dist.1996.).

{¶9} On March 11, 2009, Patrolman Groomes, Detective Mathewson, and Special Agent Perry were traveling in an unmarked police car when they witnessed a car cross the center line two or three times before making an abrupt right hand turn into a Speedway gas station from the left turn lane. Based on their observations and experience, the officers believed the driver was under the influence of drugs or alcohol.

{¶10} Detective Mathewson pulled into the gas station behind the car and activated his lights and siren. Patrolman Groomes and Detective Mathewson testified that the car stopped immediately; Whitfield, the sole occupant of the car, appeared to stuff something in between the driver's seat and the center console; and then Whitfield abruptly exited the vehicle and began approaching the officers' car. Patrolman Groomes and Detective Mathewson testified that this conduct was unusual for a traffic stop. The officers, concerned for their safety, exited their vehicle and ordered Whitfield to stop and show his hands. Neither of the officers remembered drawing their guns, but testified that it was possible. The officers were being followed by another unmarked police car carrying three additional Task Force officers, but the testimony was unclear as to whether the second unmarked car had arrived by this time.

{¶11} Detective Mathewson spoke with Whitfield to obtain his identification. Both Groomes and Mathewson testified that Whitfield's voice and hands were shaking and he appeared to be very nervous. The officers believed based on their experience, Whitfield's nervousness, the stuffing motion they observed when he was pulled over, and Whitfield's abrupt exit of his car, that something more than just a traffic infraction was going on.

{¶12} The testimony supports the conclusion that the officers had probable cause to believe the automobile contained contraband. Detective Mathewson explained that "[a] normal person, when they get stopped, is not going to reach for [something lawfully in their possession], try and stuff it in the seat, then jump immediately out of the vehicle and act nervous." Because the "car [wa]s readily mobile and probable cause exist[ed] to believe it contain[ed] contraband, the Fourth Amendment thus permit[ted the] police to search the vehicle without more." *Labron*, 518 U.S. at 940.

{¶13} Assuming without deciding that Whitfield's consent was not voluntarily given, the officers were entitled to search the vehicle without his consent under the automobile exception. "[A]n appellate court shall affirm a trial court's judgment that is legally correct on other grounds, that is, one that achieves the right result for the wrong reason, because such an error is not prejudicial." *Cook Family Invests. v. Billings*, 9th Dist. Nos. 05CA008689 & 05CA008691, 2006-Ohio-764, ¶ 19. Whitfield's first assignment of error is overruled.

<u>Assignment of Error Number Two</u>

WHITFIELD'S CONVICTION FOR POSSESSION OF OXYCODONE IN AN AMOUNT FIVE TIMES IN EXCESS OF THE BULK AMOUNT WAS BASED ON INSUFFICIENT EVIDENCE.

{¶14} In his second assignment of error, Whitfield argues that the State failed to produce sufficient evidence to sustain his conviction. Specifically, Whitfield argues that the State failed

to prove that he possessed five times the bulk amount to support the enhanced felony of the second degree. We disagree.

**{¶15}** "'[S]ufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997), quoting *Black's Law Dictionary* 1433 (6th Ed.1990). "In essence, sufficiency is a test of adequacy." *Thompkins* at 386. When reviewing a conviction for sufficiency, evidence must be viewed in a light most favorable to the prosecution. *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. The pertinent question is whether "any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*

**{¶16}** "Whether the evidence is legally sufficient to sustain a verdict is a question of law." *Thompkins* at 386. This Court, therefore, reviews questions of sufficiency de novo. *State v. Salupo*, 177 Ohio App.3d 354, 2008-Ohio-3721, ¶ 4 (9th Dist.).

**{¶17}** Whitfield argues that the relevant statute defines "bulk amount" as "[a]n amount equal to or exceeding twenty grams *or* five times the maximum daily dose in the usual dose range specified in a standard pharmaceutical reference manual * * *." (Emphasis added.) Whitfield does not appear to dispute that the maximum daily dose in the usual dose range for oxycodone is 90 milligrams. He does argue, however, that because he possessed 80 milligram pills the State could not use the maximum daily dose to determine bulk amount. Instead, according to Whitfield, the State was required to use weight and, using weight, he possessed just over the bulk amount, not five times it. We disagree with Whitfield's interpretation.

**{¶18}** Robert Amiet, Jr., a pharmacist and compliance specialist with the Ohio State Board of Pharmacy, testified at trial. Amiet has worked for the State Board of Pharmacy for

over 24 years and authors the Controlled Substance Reference Table, which is used to determine the bulk amounts of specific controlled substances. Amiet testified about the process of calculating the maximum daily dose in the usual dose range. First, he uses the *American Hospital Formulary Service Drug Information*, a standard pharmaceutical reference, to determine the usual dose range. For oxycodone, "the usual dose range is five to 15 milligrams every four to six hours." Amiet then calculates the maximum usual dose, which, for oxycodone, would be 15 milligrams every four hours or 90 milligrams every 24 hours. "Ninety milligrams is the maximum daily dose in the usual dose range [for oxycodone]."

{¶19} To determine bulk amount, you multiply the maximum daily dose in the usual dose range by five. Thus, the bulk amount of oxycodone is 450 milligrams (90 milligrams times five). Amiet testified that to calculate the number of oxycodone pills required to reach the bulk amount based on dose, you divide 450 by the tablet's dose. If the result is not a whole number, Amiet explained that he would always round up so that it would work in the defendant's favor. For example, five 90 milligram pills or six 80 milligram pills would be the bulk amount. Thus, five times the bulk amount for 80 milligram oxycodone pills would be 30 pills.

{¶20} Whitfield argues that the language used in R.C. 2925.01(D)(1)(d) does not permit the State to convert the maximum daily dose in the usual dose range into different doses. At trial Whitfield argued that the legislature chose to use the term "unit dose" in other sections, but not in R.C. 2925.01(D)(1)(d), therefore, conversion into different doses was not the intent of the legislature. Amiet explained that the legislature used the term "unit dose" in other sections of the statute when it was referring to non-legal drugs because those drugs would not have a daily dose recommendation, and therefore, the bulk amount could not be calculated in the same way.

{¶21} We conclude that the court did not err in its determination that the bulk amount of oxycodone is six 80 milligram pills, and that five times bulk is 30 pills. *See State v. Vanni*, 182 Ohio App.3d 505, 2009-Ohio-2295, ¶ 32. *See also State v. Bange*, 4th Dist. No. 10CA3160, 2011-Ohio-378, ¶12; *State v. Barnard*, 5th Dist. No. 2010-CA-00082, 2010-Ohio-5345 (9th Dist.), ¶ 39. Whitfield was in possession of 89 oxycodone pills, each 80 milligrams. Therefore, we conclude that there was sufficient evidence to support his conviction of possession of more than five times the bulk amount. Whitfield's second assignment of error is overruled.

Assignment of Error Number Three

WHITFIELD'S CONVICTION FOR POSSESSION OF OXYCODONE IN AN AMOUNT FIVE TIMES IN EXCESS OF THE BULK AMOUNT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶22} In his third assignment of error, Whitfield argues that his conviction is against the manifest weight of the evidence. We disagree.

> In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). A weight of the evidence challenge indicates that a greater amount of credible evidence supports one side of the issue than supports the other. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the fact[-]finder's resolution of the conflicting testimony." *Id*. The court's "discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily

against the conviction." *Otten* at 340. *See also State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).

{¶23} Bulk amount of a schedule II opiate or opium derivative is defined as "[a]n amount equal to or exceeding twenty grams or five times the maximum daily dose in the usual dose range *specified in a standard pharmaceutical reference manual * * *.*" (Emphasis added.) R.C. 2925.01(D)(1)(d). Amiet based his testimony on the *American Hospital Formulary Service Drug Information*, a standard pharmaceutical reference. O.A.C. 4729-11-07(F). Whitfield presented no evidence at trial to contradict Amiet's expert testimony, and, on appeal, he cites no case law to support his interpretation of the statute.

{¶24} For these reasons and the reasons discussed in the second assignment of error, we cannot conclude that the "trier of fact clearly lost its way and created [] a manifest miscarriage of justice." *See Otten*, 33 Ohio App.3d at 340. Accordingly, Whitfield's third assignment of error is overruled.

## III

{¶25} Whitfield's assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

---

BETH WHITMORE
FOR THE COURT


MOORE, J.
CARR, J.
CONCUR.


APPEARANCES:

JACK W. BRADLEY and MICHAEL E. STEPANIK, Attorneys at Law, for Appellant.

DENNIS P. WILL, Prosecuting Attorney, and MARY R. SLANCZKA, Assistant Prosecuting Attorney, for Appellee.