[Cite as *State v. Howard*, 2016-Ohio-7125.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| v. | : | No. 15AP-444 |
| | | (C.P.C. No. 13CR-1292) |
| Maurice J. Howard, | : | |
| | | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on September 30, 2016

**On brief:** *Todd W. Barstow*, for appellant. **Argued:**
*Todd W. Barstow.*

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Valerie B.
Swanson*, for appellee. **Argued:** *Valerie B. Swanson.*

APPEAL from the Franklin County Court of Common Pleas

HORTON, J.

{¶ 1} Defendant-appellant, Maurice J. Howard, appeals from a judgment of conviction and sentence entered by the Franklin County Court of Common Pleas. For the following reasons, we affirm the trial court's judgment.

**I. Facts and Procedural History**

{¶ 2} On March 8, 2013, the Franklin County Grand Jury indicted appellant on: one count of aggravated possession of oxycodone, in violation of R.C. 2925.11, a felony of the second degree; one count of possession of cocaine, in violation of R.C. 2925.11, a felony of the third degree; one count of possession of hydrocodone, in violation of R.C. 2925.11, a felony of the fourth degree; one count of possession of benzylpiperazine ("BZP"), in violation of R.C. 2925.11, a felony of the fifth degree; and, one count of having a weapon while under disability, a violation of R.C. 2923.13, a felony of the third degree. The first four counts contained one-year firearm specifications.

{¶ 3}    Appellant filed several motions to suppress, which the trial court overruled. (Aug. 26, 2014 Tr. at 20.)  The trial court conducted a jury trial.  At the trial, the testimony revealed that the charges arose out of an incident that occurred on December 1, 2010.

{¶ 4}    James Bajus, a Special Agent with the U.S. Department of Justice Bureau of Alcohol, Tobacco, Firearms & Explosives ("ATF") testified that he and Special Agent Kirk Howard were conducting surveillance in an undercover investigation that did not involve appellant.  They were sitting in an unmarked government vehicle, parked on the street near appellant's apartment.  Bajus testified he saw appellant exit his apartment and converse with people in a car parked in the apartment building parking lot.  Both agents testified appellant was carrying a pair of tennis shoes and a large canister of chemical mace. Then appellant approached the agents' car. Both special agents commanded appellant to back away from the vehicle several times.  Appellant approached the rear passenger side of the vehicle and looked in the window.  In the back seat were the agents' ballistic vests marked "ATF Police."  The agents were concerned for their safety and exited the vehicle with their guns drawn.  They detained appellant and requested assistance from other officers.  When searching appellant, they found narcotics concealed in the tennis shoes appellant was carrying.  They obtained a search warrant for appellant's apartment and found a loaded firearm, a large quantity of ammunition, numerous pills, suspected marijuana, and crack cocaine.

{¶ 5}    Columbus Police Detective Jerry Orick testified that he was supporting Special Agents Bajus and Howard on surveillance detail.  Special Agent Howard requested back-up support and Detective Orick responded.  His vehicle was only a couple blocks away.  Detective Orick testified he found $840 in appellant's wallet.  Detective Orick interviewed a few other people at the scene and, based upon the interviews, requested a search warrant for appellant's apartment.  While the officers were executing the search warrant, Christopher Danielson, appellant's roommate, requested entrance into the apartment to retrieve his tattoo equipment. Several other officers testified that they helped search the apartment, including Detective Mike Malloy, who testified he found $6,400 in the apartment.

{¶ 6}    At the trial, during the state's questioning of Detective Malloy, the prosecutor stopped the questioning and conferred with defense counsel.  (Feb. 11-13, 2015

Tr. Vol. 2 at 202.)  Then the attorneys had the following discussion with the trial judge, outside the hearing of the jury:

> [Prosecutor]:  Judge, I was going to have Detective Malloy give testimony as to the bulk amounts of drugs just so that it's in the record.  The bulk amount is relevant to the defense levels. Defense counsel is suggesting we do it as an instruction.  That is fine with me.
>
> THE COURT:  Yes. I have done that in the last trial. I did that in the last trial.
>
> [Prosecutor]:  Absolutely. That's fine. I just wanted to make sure everybody was comfortable with that.
>
> THE COURT:  Okay.  Let me put it this way:  For purposes of this, you would stipulate the bulk amount because it's as a matter of law.
>
> [Defense Attorney]:  It's smaller.
>
> THE COURT:  Well, I suppose the question that you would have is you can make a Rule 29 motion saying he didn't prove bulk amount, but once you have a weight or a number of doses, you can --
>
> [Defense Attorney]:  Once the chemist people come in here to testify as to the count, that's done.
>
> THE COURT: Yes. I agree the bulk amount would be a question of law, which will be fine.  Okay.

(Tr. Vol. 2 at 203-04.)

{¶ 7}  Kelly Ducat ("Ducat"), a forensic scientist in the Columbus Police Crime Lab, testified that he tested the firearm found in appellant's apartment and it was operable. Reagan Anderson ("Anderson"), a forensic scientist in the Columbus Police Crime Lab, testified that he tested the suspected drugs found in the shoes and in the apartment.  The chemical analysis revealed the suspected drugs were cocaine, oxycodone, hydrocodone, BZP, and marijuana.  Anderson testified that all the cocaine analyzed weighed 15.843 grams. (Tr. Vol. 2 at 218.) Anderson testified that Exhibit 4 contained 1.909 grams of marijuana. Two other bags were visually consistent with Exhibit 4.  Exhibit

5 contained 77 oxycodone-hydrochloride tablets (15 milligrams "mg") for a total weight of 7.687 grams. Exhibit 5 also contained 52 hydrocodone bitartrate (5-mg) with 500-mg acetaminophen tablets, weighing a total of 32.738 grams. Anderson testified that oxycodone is a Schedule II substance and hydrocodone and acetaminophen products were Schedule III substances.

{¶ 8} Anderson testified that Exhibit 20 contained two partial plastic bags with opaque substances inside identified as cocaine base. Exhibit 21 contained three bags of marijuana. Exhibit 22 contained 233 green, circular tablets each identified as containing 15-mg of oxycodone hydrochloride. One tablet weighed 0.127 grams. Exhibit 24 contained 30 hydrocodone bitartrate (5-mg) and 500-mg acetaminophen tablets. One tablet weighed 0.642 grams. Exhibit 25 contained four tablets identified as BZP.

{¶ 9} The parties stipulated that appellant was convicted of felonious assault, a felony of the second degree, in July 1999.

{¶ 10} Appellant was the only defense witness. He claimed the drugs and the firearm belonged to his roommate, Christopher Danielson. He denied knowing that the drugs or firearm were in the apartment. He testified that his friends arrived to give him a ride to purchase parts to repair his van. His roommate, Danielson, had called him and asked him to bring the shoes outside and Danielson would meet him on the street to retrieve them. Appellant stated he approached the car thinking Danielson was inside, but he did not hear the Special Agents yelling at him to retreat because the car windows were closed. He denied knowledge of drugs inside the shoe and did not know Danielson had drugs or the firearm inside the apartment.

{¶ 11} At the close of the evidence, the trial court instructed the jury as to Count 1 of the indictment, the aggravated possession of oxycodone charge, as follows:

> Before you can find the defendant guilty of this offense, you must find beyond a reasonable doubt that on or about the 1st day of December 2010, and in Franklin County, Ohio, the defendant knowingly possessed a controlled substance included in Schedule II, to wit, or specifically: Oxycodone, in an amount equal to or exceeding 5 times the bulk amount, but less than 50 times the bulk amount.
>
> * * *

> Bulk amount means 30 unit doses of oxycodone.

(Tr. Vol. 2 at 337-39.)

{¶ 12} The trial court instructed the jury regarding Count 3 of the indictment, possession of hydrocodone, as follows:

> Before you can find the defendant guilty of this offense, you must find beyond a reasonable doubt that on or about the 1st day of December, 2010, and in Franklin County, Ohio, the defendant knowingly possessed a controlled substance included in Schedule III, to wit: Hydrocodone, in an amount equal to or exceeding the bulk amount, but less than five times the bulk amount.
>
> * * *
>
> Hydrocodone is a Schedule III controlled substance.
>
> The bulk amount for this controlled substance is 40 unit doses.

(Tr. Vol. 2 at 342.)

{¶ 13} The jury found appellant guilty of the drug possession counts and one count of having a weapon while under disability. The jury found appellant not guilty of the firearm specifications. The trial court sentenced appellant to 7 years of imprisonment on Count 1 of the indictment; 12 months of imprisonment on each of Counts 2, 3 and 4 of the indictment; and 18 months of imprisonment on Count 5 of the indictment. Counts 1 and 5 of the indictment were to be served consecutive to each other but concurrent with Counts 2, 3 and 4 of the indictment. The total sentence imposed was 8 years and 6 months of imprisonment.

## II. Assignments of Error

{¶ 14} Appellant filed a timely notice of appeal and raised the following assignments of error for our review:

> I. THE TRIAL COURT ERRED AND DEPRIVED APPELLANT OF DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE ONE SECTION TEN OF THE OHIO CONSTITUTION BY FINDING HIM GUILTY OF AGGRAVATED POSSESSION

OF DRUGS; POSSESSION OF DRUGS; AND HAVING WEAPON UNDER DISABILITY AS THOSE VERDICTS WERE NOT SUPPORTED BY SUFFICIENT EVIDENCE AND WERE ALSO AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

II. THE TRIAL COURT COMMITTED PLAIN ERROR BY FAILING TO CORRECTLY INSTRUCT THE JURY ON THE REQUISITE AMOUNT OF OXYCODONE NEEDED TO PROVE A SECOND DEGREE FELONY AND THE REQUISITE AMOUNT OF HYDROCODONE NEEDED TO PROVE A FOURTH DEGREE FELONY.

### III. Discussion

{¶ 15} By his first assignment of error, appellant contends that the trial court deprived him of his due process rights by finding him guilty of aggravated possession of drugs and possession of drugs[1] because those verdicts were not supported by sufficient evidence and were against the manifest weight of the evidence.

{¶ 16} Whether evidence is legally sufficient to sustain a verdict is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997), superseded by constitutional amendment on other grounds as stated in *State v. Smith*, 80 Ohio St.3d 89 (1997). Sufficiency is a test of adequacy. *Id.* The evidence is construed in the light most favorable to the prosecution to determine whether a rational trier of fact could have found the essential elements of the offense proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus, superseded on other grounds; *State v. Conley*, 10th Dist. No. 93AP-387 (Dec. 16, 1993). When reviewing the sufficiency of the evidence, the court does not weigh the credibility of the witnesses. *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, ¶ 79. "[T]he mere existence of conflicting evidence cannot make the evidence insufficient as a matter of law." *State v. Murphy*, 91 Ohio St.3d 516 (2001).

{¶ 17} Sufficiency of the evidence and manifest weight of the evidence are distinct concepts; they are "quantitatively and qualitatively different." *Thompkins* at 386. When presented with a manifest weight argument, the appellate court engages in a limited

---

[1] Although listed in his assignment of error, appellant made no argument that there was insufficient evidence regarding his conviction for having a weapon under disability nor that it was against the manifest weight of the evidence.

weighing of evidence to determine whether sufficient competent, credible evidence permits reasonable minds to find guilt beyond a reasonable doubt. *Conley*; *Thompkins* at 387. "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *Thompkins*. In the manifest weight analysis, the appellate court considers the credibility of the witnesses and determines whether the jury "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). Determinations of credibility and weight of the testimony remain within the province of the trier of fact. *State v. DeHass*, 10 Ohio St.2d 212 (1967), paragraph one of the syllabus.

{¶ 18} R.C. 2925.11 prohibits a person from knowingly obtaining, possessing or using a controlled substance. Oxycodone is a Schedule II controlled substance. R.C. 3719.01(C) (defining "controlled substance" as including any Schedule II or Schedule III substance). R.C. 3719.41(Schedule II)(A)(1)(n) lists oxycodone as a Schedule II substance. Possession of oxycodone is a felony of the second degree if "the amount of [oxycodone] involved equals or exceeds five times the bulk amount but is less than fifty times the bulk amount." R.C. 2925.11(C)(1)(c). The "bulk amount" of oxycodone is "[a]n amount equal to or exceeding twenty grams or five times the maximum daily dose in the usual dose range specified in a standard pharmaceutical reference manual." R.C. 2925.01(D)(1)(d). Former R.C. 2925.01(M)(1)-(3) defines "standard pharmaceutical reference manual" as "the current edition, with cumulative changes if any, of any of the following reference works: (1) 'The National Formulary'; (2) 'The United States Pharmacopeia,' prepared by authority of the United States Pharmacopeial Convention, Inc.; (3) other standard references that are approved by the state board of pharmacy."

{¶ 19} Appellant was also charged with knowingly obtaining, possessing or using hydrocodone, a Schedule III substance, in an amount equal to or exceeding the bulk amount but less than five times the bulk amount. Former R.C. 2925.11(C)(2)(b). The bulk amount for hydrocodone is "an amount equal to or exceeding twenty grams or thirty times the maximum daily dose in the usual dose range specified in a standard pharmaceutical reference manual of a compound, mixture, preparation, or substance that

is or contains any amount of a Schedule III opiate or opium derivative."  Former R.C. 2925.01(D)(3).[2]

{¶ 20} Appellant presents two arguments regarding sufficiency and manifest weight.  He argues that the officers who testified were confused regarding the locations of the drugs found in the apartment and that the state failed to prove the bulk amount of the drugs because the state presented evidence as to the weight of oxycodone and hydrocodone, but not as to the maximum daily dose.  Appellant argues that the state did not prove the amount of oxycodone and hydrocodone that the officers found and this court should reverse appellant's convictions of possession and remand for further proceedings because the state only proved a felony of the third degree and a misdemeanor of the first degree.

{¶ 21} Appellant argues that the state did not prove he possessed the substances inside the apartment because the officers were unable to pinpoint exact locations of the items inside the apartment.  Appellant argues that the apartment was a two-bedroom apartment, he and his roommate had separate bedrooms, and the drugs and firearm belonged to his roommate.

{¶ 22} The officers testified regarding the items found in the apartment.  They were able to identify the exhibits of drugs and the firearm and discuss where they found the items.  Officer Adam Klontz testified he found the firearm on the side shelves of the entertainment center in the family room. Detective Malloy testified he found $6,400 in a pair of shoes in the northeast bedroom. Officer Brett Slaughter testified he found the suspected drugs in a trash bag in the west bedroom.  (Tr. Vol. 2 at 188.)  The state demonstrated that the lease of the apartment was in appellant's name and appellant received mail at that address.

{¶ 23} The jury heard all the testimony and apparently discounted any confusion regarding the exact location of the drugs inside the apartment, which is within its province to do. The trier of fact is in the best position to take into account any inconsistencies, the demeanor of the witnesses, and the manner of testifying to determine whether the witnesses' testimony is credible. *State v. Williams*, 10th Dist. No. 02AP-35,

---

[2] Appellant argues that the bulk amount for hydrocodone is defined in R.C. 2925.01(D)(2), but it is actually R.C. 2925.01(D)(3) for a Schedule III opium derivative.

2002-Ohio-4503, ¶ 58. "While the jury may take note of the inconsistencies and resolve them or discount them accordingly, see *DeHass*, supra, such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." *State v. Nivens*, 10th Dist. No. 95APA09-1236 (May 28, 1996). "The jury is the sole judge of the weight of the evidence and the credibility of witnesses. It may believe or disbelieve any witness or accept part of what a witness says and reject the rest." *State v. Antill*, 176 Ohio St. 61, 67 (1964). Appellant's first argument in his first assignment of error is not well-taken.

{¶ 24} Appellant's second argument within his first assignment of error is that the state failed to introduce sufficient evidence to support his possession conviction because the state failed to prove the bulk amount of the drugs. Rather than having the state produce testimony concerning the bulk amount of the drugs, the trial court instructed the jury regarding the bulk amount. The state's forensic chemist identified the number of tablets and the total weight of oxycodone and hydrocodone that appellant possessed, but appellant contends that the state did not introduce evidence that would permit the jury to determine what constitutes a "maximum daily dose" of either substance. Rather, the trial court provided the bulk amount definition in its jury instructions. As previously stated, the discussion proceeded, as follows:

> [Prosecutor]: Judge, I was going to have Detective Malloy give testimony as to the bulk amounts of drugs just so that it's in the record. The bulk amount is relevant to the defense levels. Defense counsel is suggesting we do it as an instruction. That is fine with me.
>
> THE COURT: Yes. I have done that in the last trial. I did that in the last trial.
>
> [Prosecutor]: Absolutely. That's fine. I just wanted to make sure everybody was comfortable with that.

(Tr. Vol. 2 at 203-04.)

{¶ 25} And the trial court gave the following instructions to the jury:

> Bulk amount means 30 unit doses of oxycodone.
>
> * * *

Hydrocodone is a Schedule III controlled substance.

The bulk amount for this controlled substance is 40 unit doses.

(Tr. Vol. 2 at 339-42.)

{¶ 26} In *State v. Zoltan*, 7th Dist. No. 11 MA 160, 2014-Ohio-3788, ¶ 44-47, the court recognized that the statute provides two methods for the state to prove bulk amount. The first method involves testimony regarding the weight of the drugs. The second method to establish bulk amount is to introduce evidence that the drugs equaled or exceeded five times the maximum daily dose in the usual dose range specified in a standard pharmaceutical reference manual. The *Zoltan* court recognized a division in the appellate courts concerning this approach. Some appellate courts have held that what constitutes the maximum daily dose is a question of fact which must be proved in one of three ways: "(1) by stipulation, (2) by expert testimony as to what a standard pharmaceutical reference manual prescribes, or (3) by a properly proven copy of the manual itself." *Id.* at ¶ 47, citing *State v. Huber*, 187 Ohio App.3d 697, 2010-Ohio-2919, ¶ 8 (2d Dist.); *State v. Montgomery*, 17 Ohio App.3d 258 (1st Dist.1984). Other appellate districts have held that the trial court can take judicial notice of what constitutes the bulk amount by reference to a standard pharmaceutical reference manual and instruct the jury accordingly. *State v. Fisher*, 5th Dist. No. 05CAA04, 2006-Ohio-2201, ¶ 13-22; *State v. Cole*, 12th Dist. No. CA2004-01-007, 2005-Ohio-2274, ¶ 29-30; *State v. Drummond*, 3d Dist. No. 16-11-08, 2012-Ohio-1468, ¶ 15; *State v. Feltner*, 2d Dist. No. 88-CA-34 (Aug. 16, 1989); *State v. Morales*, 5th Dist. No. 2004 CA 68, 2005-Ohio-4714. In *State v. Johnson*, 10th Dist. No. 13AP-997, 2015-Ohio-3248, ¶ 76, this court acknowledged that, at trial, the parties "stipulated that the bulk amount of Oxycodone 30 milligram pills, a Schedule II substance, is 15 unit doses or 15 pills."

{¶ 27} In this case, we have a stipulation and a jury instruction. The parties stipulated that the trial court should instruct the jury regarding the bulk amount. The prosecutor informed the trial court that defense counsel suggested an instruction rather than have the state provide testimony. Appellant argues that we should not interpret defense counsel's silence on the record as a stipulation. While in some cases that may be

true, here, after conferring with defense counsel, the prosecutor indicated that it was defense counsel's idea to provide the bulk amount to the jury through an instruction. If defense counsel did not agree to that interpretation, he did, at that point, have an obligation to object.

{¶ 28} In *State v. Tate*, 138 Ohio St.3d 139, 144, 2014-Ohio-44, the Supreme Court of Ohio defined a "stipulation in law" as "nothing more than agreement as to the veracity of a fact in issue. *Black's Law Dictionary* 1550 (9th Ed.2009) defines 'stipulation' as a 'voluntary agreement between opposing parties concerning some relevant point; esp., an agreement relating to a proceeding, made by attorneys representing adverse parties to the proceeding.' " Defense counsel did not object and permitted the prosecutor to inform the trial court that he suggested and agreed to the instruction.

{¶ 29} In addition to the stipulation, in this case, the state also presented Anderson's laboratory analysis report. (Ex. K.) In the report, Anderson designated the weight of each tablet of oxycodone and hydrocodone and specified that each tablet constituted one unit dose. Anderson also testified and the report specified how many tablets of each drug the officers found. Thus, the jury had the stipulation and the report to determine the bulk amount.

{¶ 30} After reviewing the evidence presented at trial, and viewing it in a light most favorable to the prosecution, we conclude, "any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Jenks* at paragraph two of the syllabus. Appellant's second argument regarding his first assignment of error is not well-taken, and as such, appellant's first assignment of error is overruled.

{¶ 31} In his second assignment of error, appellant contends that the trial court committed plain error by failing to instruct the jury correctly on the requisite amount of oxycodone needed to prove a felony of the second degree and the requisite amount of hydrocodone needed to prove a felony of the fourth degree.

{¶ 32} Pursuant to Crim.R. 30(A), a party may not assign as error the giving or failure to give any instruction unless the party objected before the jury retired. However, Crim.R. 52(B) enables an appellate court to take notice of plain error without an objection. For an error to constitute "plain error" under Crim.R. 52(B), it must satisfy three prongs: (1) there must be an error, meaning a deviation from a legal rule, (2) the

error must be "plain," meaning an "obvious" defect in the trial proceedings, and (3) the error must have affected "substantial rights," meaning the error must have affected the outcome of the trial. *State v. Barnes*, 94 Ohio St.3d 21, 27 (Jan. 9, 2002). An appellate court recognizes plain error with the utmost caution, under exceptional circumstances, and only to prevent a miscarriage of justice. *State v. Pilgrim*, 184 Ohio App.3d 675, 2009-Ohio-5357, ¶ 58 (10th Dist.), citing *State v. Diar*, 120 Ohio St.3d 469, 2008-Ohio-6266, ¶ 139.

{¶ 33} Appellant argues that the trial court incorrectly instructed the jury as to the bulk amount. Appellant contends that the trial court needed to instruct the jury as to the weight of the drug necessary to prove bulk amount. However, the statute sets forth that the prosecution has the option to prove weight or the maximum daily dose. The trial court was not required to instruct only as to weight. *See Zoltan*, where the trial court found the statute provides two methods to prove bulk amount and the state has "the option of proving appellant sold the bulk amount by either weight or by reference to the maximum daily dosage." *Id.* at ¶ 44.

{¶ 34} Further, appellant argued during oral argument that the trial court erred in using "unit dose" and not "maximum daily dose" in its instructions. Appellant has provided no evidence under a plain error analysis that the outcome of the trial would have been different if the trial court had utilized "maximum daily dose" instead of "unit dose."

{¶ 35} In *State v. Whitfield,* 9th Dist. No. 11CA010048, 2012-Ohio-5019, the defendant argued the language in R.C. 2925.01(D)(1)(d) did not permit the prosecution to convert the "maximum daily dose in the usual dose range" into different doses, or "unit doses." The Ninth District Court found the trial court did not err in its determination that the bulk amount of oxycodone is six 80-mg tablets and that five times the bulk is thirty 80-mg tablets.

{¶ 36} In this case, the jury had the ability to determine the bulk amount from the evidence and the jury instructions. The evidence showed that appellant possessed 310 oxycodone tablets (77 tablets in Ex. 5 and 233 tablets in Ex. 22) and Exhibit K specified that each tablet constituted one unit dose. The jury instruction provided that the bulk amount was 30 unit doses. The jury was capable of calculating the maximum daily dose because 30 unit doses equals the maximum daily dose multiplied by 5 (30 tablets ÷ 5 =

6).  The jury then was able to determine that 310 tablets was more than 150 tablets (5 x 30 = 150) tablets and less than 1,500 tablets (50 x 30 = 1,500 maximum for a felony of the second degree).  Similarly, appellant possessed 82 hydrocodone bitartrate with acetaminophen tablets (Ex. 5 contained 52 tablets and Ex. 24 contained 30 tablets).  The instruction provided that the bulk amount is 40 unit doses (40 ÷ 5 = 8 maximum daily dose).  Thus, the jury was able to determine that appellant possessed an amount equal to or exceeding the bulk amount (40 tablets) but less than five times the bulk amount (40 x 5 = 200).

{¶ 37} Upon review, we conclude that the jury was able to calculate the bulk amount given the evidence and the jury instructions, although the trial court utilized different language.  Appellant has not demonstrated that the outcome of the trial was affected and thus, he has not demonstrated plain error.  His second assignment of error is overruled.

## IV. Disposition

{¶ 38} Having overruled appellant's two assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

DORRIAN, P.J. and LUPER SCHUSTER, J., concur.

————————————